The COASTAL CORPORATION,
Appellant,

v.

Daniel TORRES, William Bourland,
and David Natividad, Appellees.

No. 13–00–732–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

March 25, 2004.

Rehearing Overruled May 27, 2004.

Darrell L. Barger, Augustin Rivera, Jr., Dunn Weathered Coffey Rivera & Kasperitis, PC, Russell H. McMains, Law Office of Russell H. McMains, Corpus Christi, Reagan Wm. Simpson, King & Spalding, Julie Tellepsen, Fulbright & Jaworski, Houston, Mike A. Hatchell, Hatchell, PC, for appellant.

Mikal C. Watts, Juan Enrique Mejia, Brantley W. White, Watts & Heard, Craig M. Sico, Sico White & Braugh, Corpus Christi, William Powers, Jr., Austin, Richard P. Hogan, Jr., Hogan Dubose & Townsend, Houston, Thomas H. Crofts, Jr., Jacqueline M. Stroh, Sharon E. Callaway, Crofts & Callaway, San Antonio, for appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

**OPINION**

Opinion by Justice RODRIGUEZ.

This is a personal injury case that involves a refinery explosion caused by a defect in a pressure vessel. Appellees, Daniel Torres, William Bourland, and David Natividad, asserted a negligence claim against appellant, The Coastal Corporation (Coastal). Following a jury trial, the trial court entered judgment against Coastal. By five issues, Coastal contends appellees' theory of recovery is not recognized in Texas; the evidence is legally and factually insufficient to support such theory, if recognized; the trial court erred in admitting expert testimony; the award of actual damages is excessive; and prejudgment interest on future damages should not have been awarded. We reverse and render.

## I. BACKGROUND

An explosion occurred in May 1999 at a Corpus Christi refinery owned and operated by Coastal Refining & Marketing, Inc. (Coastal Refining).[1] A pressure vessel ruptured, releasing a large amount of naphtha that found an ignition source and exploded. Appellees, who were Coastal Refining employees, received serious injuries in the accident. The rupture occurred as a result of the vessel's walls thinning from internal corrosion.

Appellees sued appellant for negligence and gross negligence alleging that "through central budgetary authority exercised by Coastal's corporate officers in Houston, Texas, Coastal ... assumed control over maintenance, turnaround, and inspection matters at the plant." In response to a broad-form negligence question, the jury found Coastal's negligence

1. Coastal, a parent company, owns stock in corporations that, in turn, own stock in Coastal Refining, a subsidiary. Coastal Refining owned the premises and employed appellees. Coastal Refining also provided workers' compensation benefits for appellees' injuries. *See* Tex. Lab.Code Ann. § 408.001 (Vernon 1996).

proximately caused appellees' injuries.[2] The court's charge defined the terms "negligence," "ordinary care," and "proximate cause."[3] Moreover, the detailed instructions accompanying the question provided, in relevant part:

> In order to find negligence on the part of The Coastal Corporation, you must find all of the following: (1) The Coastal Corporation had the right to control the budget and/or expenditures of Coastal Refining & Marketing, Inc.; (2) The Coastal Corporation exercised that right of control through a person who was acting as a director, officer, employee or agent of The Coastal Corporation; and (3) The Coastal Corporation's exercise of that control amounted to negligence.

The jury answered, "Yes," as to each appellee and awarded actual damages totaling $122.5 million.

By its first issue, Coastal challenges appellees' theory of liability in this case. It contends Texas does not recognize a cause of action against a parent company for negligent control of the budget of its subsidiary. Because appellees have waived any premises liability, Coastal argues that appellees are left with theories of recovery that have no support in Texas law.

**2.** The negligence question asked: "Did the negligence, if any, of the Coastal Corporation proximately cause the occurrence in question?"

**3.** " 'Negligence' means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

" 'Ordinary care' means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances."

"Proximate cause" means:

## II. ANALYSIS

Appellees assert that Coastal's duty arises from traditional and mainstream principles of tort law. Coastal, however, contends Texas courts have not accepted any theory of recovery urged by appellees.

### A. Negligent Control of Subsidiary's Budget

■ Appellees complain of Coastal's actions in allegedly taking control of the safety budget and expenditures for the refinery and imposing policies that created strict procedures over its subsidiary's access to funds. Because Coastal was allegedly negligent through its own conduct in creating that management scheme and in withholding funds for inspectors and safety maintenance, appellees contend Coastal is liable.

Appellees assert Texas case law provides the mainstream duty that Coastal owed appellees, that being a duty arising from its alleged negligent control over budgets and expenditures. Relying on *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417–18 (Tex.1985), and cases following *Redinger*, to support their control-based liability theory, appellees contend Coastal, by

that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event, but if an act or omission of any person not a party to this suit was the 'sole proximate cause' of an occurrence, then no act or omission of any other person could have been a proximate cause.

limiting expenditures, controlled and influenced its subsidiary in a way that directly resulted in appellees' injuries. The facts, however, underlying the *Redinger* line of cases are distinguishable from the present facts.

In *Redinger*, the court reviewed supervisory control over construction work that caused the injury, an activity conducted on the premises. *See id. Redinger* adopted section 414 of the Restatement (Second) of Torts, which imposes liability based on control of another's work activities. Section 414 provides:

> One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* at 418 (quoting RESTATEMENT(SECOND) OF TORTS § 414 (1977)). Appellees also rely on: (1) *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736 (Tex.1998) (control over specific details of the work); (2) *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 22–23 (Tex.1993) (in case alleging negligence in maintaining safe workplace, focus must be on specific control over safety and security of premises, rather than more general right of control over operations); and (3) *Humble Oil & Ref. Co. v. Martin*, 148 Tex. 175, 178, 222 S.W.2d 995, 998 (1949) (control over details of station operations including strict system of financial control and supervision).[4] From the *Redinger* line of cases, it is apparent that liability is imposed when there is specific control over

the activity that caused the accident. *See Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999) (per curiam) (control over injury-producing event); *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356–58 (Tex.1998) (control over details of work); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155–56 (Tex. 1999) (employer must have some degree of control over manner in which work done); *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex.1999) (for general contractor to be liable for independent contractor's acts, it must have right to control means, methods, or details of independent contractor's work); *see also Dow Chemical Co. v. Bright*, 89 S.W.3d 602, 611 (Tex. 2002) (mere promulgation of safety policies does not establish actual control over independent contractor).

In the present case, appellees assert negligent control of the budget, not negligent control over details of specific operational activities. We cannot conclude the cited authority provides support for appellees' argument. Because appellees have provided us with no authority, and we find none, where a Texas court has imposed liability against a parent company, under mainstream principles of tort law, for negligent control of such remote conduct as budgeting activities, we conclude appellees' control-based negligence theory of recovery fails.

### B. Affirmative Conduct/Undertaking Liability

■ Coastal also challenges the viability of any affirmative conduct theory of recovery appellees now argue on appeal.

---

4. *Humble Oil* is also a vicarious liability case, holding the service station's operator was not an independent contractor but an employee of Humble Oil. *See Humble Oil & Ref. Co. v.*

*Martin*, 148 Tex. 175, 178, 222 S.W.2d 995, 998 (1949). Appellees do not advance any theory of vicarious liability in this case.

Appellees assert Coastal's tort duty flows from the mainstream duty rule that a party must use reasonable care in its affirmative conduct. Appellees construe the affirmative conduct about which they complain as Coastal's choice of a business management plan that allegedly gave Coastal control over expenditures and budgets. They describe this theory as one closely akin to an "undertaking liability."

The Texas Supreme Court discussed the undertaking theory of liability in *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex.2000). The *Torrington* court concluded undertaking liability requires the submission of the following specific duty predicates:

> (1) [the defendant] undertook to perform services that it knew or should have known were necessary for the plaintiffs' protection, (2) [the defendant] failed to exercise reasonable care in performing those services, and either (3) [a third party charged with protecting the plaintiffs] relied upon [the defendant's] performance, or (4) [the defendant's] performance increased the plaintiffs' risk of harm.

*Id.* at 838.[5] While the trial court's charge in *Torrington* included the usual definitions of "negligence," "ordinary care," and "proximate cause," it gave the jury no further instructions or definitions applicable to the negligence question. *Id.* Because the charge did not submit the necessary duty predicates for a voluntary undertaking claim, and because neither plaintiff nor the court of appeals had the guidance of *Torrington* at the time the case was tried, the supreme court remanded the undertaking claim to the trial court. *Id.* at 841.

In the present case, the above duty predicates were not submitted in the trial court's charge. Unlike *Torrington*, however, the court's charge did include the following predicates which appellees assert gave rise to a legal duty: (1) Coastal had the right to control the budget and/or expenditures of Coastal Refining & Marketing, Inc.; and (2) Coastal exercised that right of control through a person who was acting as a director, officer, employee or agent of Coastal. Appellees assert these elements were submitted in an effort to prove that, by refusing to budget necessary funds, Coastal chose to control the "safety duty" that the refinery owed its employees. However, the actions about which appellees complain are not affirmative actions of control undertaken to provide services to protect another. Appellees are complaining of refusals or failures to budget. This is the antithesis of an affirmative course of action. *See Peterson v. Mut. Sav. Inst.*, 646 S.W.2d 327, 329 (Tex.App.-Austin 1983, no writ) (plaintiff must show an "affirmative undertaking ... *for the benefit of the injured person*") (emphasis in original); *see also Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396–96 (Tex.1991) (mere promise to repair bridge with neither per-

---

**5.** The elements of an undertaking theory are dictated by section 324A of the Restatement (Second) of Torts, which covers the situation in which one undertakes to perform a service to another that is for the protection of the plaintiff as a third party. *See* Restatement (Second) of Torts § 324A (1965). In listing those elements in *Torrington*, the supreme court actually cited section 323 of the Restate-

ment, which covers the slightly different situation of an undertaking intended to benefit the plaintiff directly, rather than as a third party. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838–39 (Tex.2000) (citing Restatement (Second) of Torts § 323 (1965)). Both sections have essentially the same elements, and the *Torrington* opinion cites both sections. *See id.* at 837–38.

formance nor reliance imposes no tort obligation on promissor); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976) (jury found insurance company had undertaken to provide fire insurance coverage for house that burned down and, thus, had assumed duty to exercise reasonable care when purchasing coverage); *Johnson v. Abbe Eng'g Co.*, 749 F.2d 1131, 1133 (5th Cir.1984) (parent corporation's duty may be established by showing it undertook inspection of entire plant). Accordingly, we conclude Coastal's alleged actions do not comprise affirmative conduct akin to an affirmative undertaking pursued for the benefit of the injured person. Moreover, appellees have provided us with no authority, and we find none, where a Texas court has, under mainstream principles of tort law, construed a parent company's refusal or failure to budget as an affirmative undertaking and imposed liability against a parent company. Thus, appellees' affirmative conduct theory also fails.

### C. Negligent Activity

■ More accurately, appellees' theory of recovery is a "negligent activity" claim, the term that the Texas Supreme Court uses to distinguish activity-based torts from premises-liability claims. *See, e.g., Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *see also Alamo Lumber Co. v. Pena*, 972 S.W.2d 800, 804 (Tex.App.-Corpus Christi 1998, pet. denied) (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997)) (negligent activity and premises defect theories may coexist, depending on facts of particular case).

Texas law, however, requires that a "negligent activity" be a contemporaneous cause of the accident. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex.1998) (claim for inadequate security is premises defect claim, not activity claim); *Keetch*, 845 S.W.2d at 264 (affirmative activity of spraying plants with water which caused floor to become slippery is premises claim not negligent activity); *see also Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382, 383–84 (Tex.1997) (muffling elevator gate alarm resulted in premises claim, not general claim for negligent activity); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex.1992) ("failure to pre-bag chicken theory" rejected by supreme court as an impermissible negligent-activity claim when plaintiff fell in puddle of chicken blood, water, and other fluids).

The accident made the basis of this suit did not occur as a contemporaneous result of any of the conduct appellees allege: namely Coastal's original purchase of the refinery premises; Coastal's transfer of the premises to its subsidiary, Coastal Refining; or Coastal's alleged budgeting activities. Thus, under the facts of this case, appellees cannot recovery under a negligent activity theory.

### D. Premises Defect

■ Coastal further argues this case is strictly a classic premises defect case arising out of a failure of the walls of a pressure vessel that were too thin to be operated safely.[6] *See Cain*, 972 S.W.2d at 753; *Liedeker*, 958 S.W.2d at 385. Appellees elected, however, not to seek recovery

---

**6.** The hallmark factors of a premises defect claim are: (1) the actual cause of the injury is a condition of property; (2) that condition existed prior to the accident; and (3) the condition of property posed a general danger to all working on the premises, rather than a specific danger to a person performing a particular activity. *Alamo Lumber Co. v. Pena*,

based on a premises defect. Therefore, relief, if any, on this basis has been waived, and we need not address it on appeal.[7]

Accordingly, we sustain Coastal's first issue.

Because of our disposition of Coastal's first issue, we need not address the remaining issues. TEX.R.APP. P. 47.1.

## III. CONCLUSION

■ Appellees have masterfully presented their arguments in an attempt to obtain relief under a negligence theory bounded by traditional and mainstream principles of tort. We must conclude, however, that Texas law, as it exists today, imposes no liability on a parent company to approve budgets for its subsidiaries in order to assure that the subsidiaries repair defects on their premises.[8] Moreover, the Texas Supreme Court has often demonstrated its unwillingness to expand tort duties in Texas. *See e.g., Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 658 (Tex.1999) (declining to create any "universal duty" on premises owners to prevent criminal activity on their property); *Van Horn v. Chambers,* 970 S.W.2d 542, 546–47 (Tex.1998) (declining to impose a duty on physicians to protect third persons from acts committed by patients); *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 353 (Tex.1995) (declining to recognize a new common law duty after weighing the likelihood of injury against the utility of the

defendant's conduct, the burden of preventing the injury, and the effect of placing that burden on the defendant).

Accordingly, the judgment of the trial court is reversed and rendered that appellees take nothing.

---

972 S.W.2d 800, 804 (Tex.App.-Corpus Christi 1998, pet. denied).

**7.** We also note appellees did not charge the jury with veil-piercing or with a single-enterprise theory of recovery. Thus, appellees waived any claims they may have had based on those theories.

**8.** *See generally* William Powers, Jr., *Judge and Jury in the Texas Supreme Court,* 75 TEX. L.REV. 1698, 1710 (1997) (noting that Texas Supreme Court is "articulating more particularized duty rules" rather than imposing any generalized duty to exercise ordinary care).