Reversed and Remanded and Opinion filed May 30, 2006









Reversed
and Remanded and Opinion filed May 30, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00651-CV

____________

 

COASTAL REFINING
& MARKETING, INC., 

COASTAL
OFFSHORE INSURANCE LIMITED, AND 

LEXINGTON
INSURANCE COMPANY, Appellants

 

V.

 

UNITED STATES
FIDELITY AND GUARANTY COMPANY, Appellees

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 00-43872

 



 

O P I N I O N








In this insurance coverage dispute, the
insurer argued it had no duty to reimburse its insured and two other carriers
for the costs of settling a personal injury suit and moved for traditional
summary judgment on the grounds that the insured (a) did not notify the insurer
of the suit until less than a month before trial, (b) settled the suit without
the insurer=s consent, and (c) allegedly failed
to cooperate with the insurer.  Because
the insurer produced no evidence that the actions of its insured or the
settling carriers caused prejudice to the insurer, and no evidence that the
insured failed to cooperate, we reverse the trial court=s grant of summary
judgment and remand this case for further proceedings consistent with this
opinion. 

I. Factual
and Procedural Background

Weaver Industrial Service, Inc. (AWeaver@) entered into a AService Contract@ with Coastal
Refining & Marketing, Inc. (ACoastal@).  The Service Contract required Weaver to
supply labor, supervision, and equipment for maintenance and repairs to Coastal=s refinery
equipment and property.  The Service
Contract also required Weaver to designate Coastal as an additional insured on
insurance policies providing coverage for all claims, demands, and causes of
action arising out of Weaver=s work.  The policies were required to be primary to
all other valid insurance available to Coastal. 


Weaver added Coastal to its United States
Fidelity and Guaranty Company (AUSF&G@) commercial
general liability and umbrella policies. 
The policies were occurrence-based, as opposed to Aclaims made@ policies, and
provided coverage for property damage and bodily injuries.  On May 13, 1999, Weaver=s employee,
Rolando Lopez, was one of several people injured in an explosion at
Coastal.  Lopez and his common law wife
sued Coastal and its parent company, Coastal Corporation, for negligence and
gross negligence in Nueces County, Texas (the ALopez suit@). 








Without notifying USF&G of the suit,
Coastal retained the firm of Barger, Hermansen, McKibben & Villareal,
L.L.P.[1]
as defense counsel.  On May 13, 2000, the
Lopez suit failed to settle at a court-ordered mediation during which
the plaintiffs demanded $19 million. 
After the mediation, Coastal tendered its $500,000.00 self-insured
retention, $500,000.00 from a fronting policy, and $1 million from Coastal
Offshore Insurance Limited (ACOIL@), Coastal=s captive
insurance company, to its excess insurer, Lexington Insurance Company (ALexington@).  Lexington assumed the defense of the case
through the same counsel, and settlement negotiations continued.  

On or about June 15, 2000, Coastal=s defense
attorneys contacted Weaver and Whitney Vaky Insurance Agency, the agent and
producer of the USF&G policies at issue, and made a Ademand for
insurance coverage@ as an additional insured under the
USF&G general liability and umbrella policies.  The demand letter included a copy of the
latest petition in the Lopez suit, the Service Contract between Weaver
and Coastal, and the certificate of liability insurance showing Coastal as an
additional insured on the USF&G policies. 
The letter stated that a mediation was scheduled for June 17, 2000, and
requested Athe presence of the appropriate
representatives at the mediation.@  The notice to Weaver appears to have been
made in accordance with a provision in the Service Contract that required all
notices concerning liability or indemnity to be sent to Weaver at a specified
fax number.  The record does not show the
date Weaver received the notice; however, the parties agree that the notice was
forwarded to USF&G by June 19 or 20, 2000.[2]








USF&G did not respond to the letter
until five days after the referenced mediation had taken place and at least
three days after receiving the demand. 
On June 23, 2000, USF&G senior claim specialist Mitchell Harless
telephoned Coastal=s attorneys and learned that the Lopez plaintiffs= final demand at
the second mediation was $8.5 million, and that Lexington had offered $6
million.  USF&G also learned that
trial was set for July 10, 2000, and that settlement negotiations were
continuing.  In a letter to Coastal=s attorneys on
June 23, 2000, Harless reserved USF&G=s right to
disclaim coverage due to late notice, and to contest Coastal=s status as an
additional insured on the basis that Lopez=s injuries did not
arise out of Weaver=s work for Coastal.  USF&G also requested Acopies of all
reports generated by persons who have investigated this accident . . . [and]
reports and information concerning the injury and damages sustained by Mr.
Lopez.@

On June 29, 2000, USF&G informed
Coastal=s defense
attorneys that USF&G Ahad insufficient information about
liability or damages to respond to the June 15 demand letter,@ and arranged to
visit the offices of Coastal=s attorneys on
July 5, 2000 to review the litigation files in the Lopez suit.  USF&G was aware that settlement
negotiations were continuing at that time.

Using funds supplied by Coastal, COIL, and
Lexington, Coastal=s defense attorneys settled the Lopez
suit for $7 million on June 30, 2000. 
USF&G subsequently filed suit against Coastal, seeking a declaration
that USF&G had no duty to indemnify Coastal for the settlement funds.  COIL and Lexington intervened in the suit.

USF&G moved for traditional summary
judgment on the grounds that Coastal breached explicit policy conditions by (a)
failing to give USF&G notice of the Lopez suit for over a year after
it was filed, (b) settling the suit without USF&G=s knowledge or
consent, and (c) breaching its duty to cooperate with USF&G.  The court granted USF&G=s summary  judgment motion without stating the grounds
for its decision, and Coastal, Lexington, and COIL appeal.

II. 
Issues Presented








The sole issue presented for our review is
whether the trial court erred in granting USF&G=s motion for
summary judgment.  Appellants Coastal,
COIL, and Lexington argue the motion was improperly granted because USF&G
failed to meet its evidentiary burden to establish it was prejudiced by the
late notice or settlement of the Lopez suit, or by Coastal=s alleged failure
to cooperate.  Appellants additionally
argue that any breach of the policy=s cooperation,
prompt notice of suit, or voluntary payment clauses is immaterial, and does not
discharge USF&G=s duty to indemnify Coastal and the
settling carriers for the costs of settlement. 

III.  Standard
of Review

We examine the
summary judgment evidence applying familiar standards of review.  Dolcefino v. Randolph, 19 S.W.3d 906,
916 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  A summary judgment movant must
establish its right to summary judgment by conclusively proving all elements of
the movant=s claim or defense as a matter of
law.  See Tex. R. Civ. P. 166a(c); Havlen v. McDougall, 22
S.W.3d 343, 345 (Tex. 2000).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s favor. 
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004).  Under Texas Rule of Civil
Procedure 166a(c), a  party moving for
summary judgment bears the burden to show that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law.  Id. 
We will affirm the summary judgment if any of the theories presented to
the trial court are meritorious.  Id.

IV. 
Analysis

A.      Late Notice

Coastal admits it failed to provide
USF&G prompt notice of suit as required by the policy, but contends that
summary judgment cannot be affirmed on this basis because USF&G produced no
evidence it was prejudiced by the late notice. 
USF&G responds that the policy=s notice provision
is a condition precedent to coverage, and therefore Coastal was required to
comply in order to invoke coverage. 
USF&G argues that because Coastal failed to provide prompt notice of
the Lopez suit, the suit is not covered under the policy, regardless of
whether the lack of notice caused prejudice. 
In the alternative, USF&G argues that the delay in notice prejudiced
USF&G as a matter of law.








The provision at issue states:

With regard to Bodily Injury and
Property Damage Liability, unless we are prejudiced by the insured=s or your failure to comply with
the requirement, any provision of this Coverage part requiring you or any
insured to give notice of Aoccurrence,@ claim or Asuit,@ or forward demands, notices,
summonses or legal papers in connection with a claim or Asuit@ will not bar coverage under this
Coverage Part.

(emphasis added). 
Under the express terms of the policy, Coastal=s violation of the
notice requirement does not void coverage absent prejudice to USF&G.

Whether an insurer
is prejudiced by lack of notice is generally a question of fact. Struna v.
Concord Ins. Services, Inc., 11 S.W.3d 355, 359B60 (Tex. App.CHouston [1st
Dist.] 2000, no pet.).  USF&G
presented no evidence of prejudice, instead arguing that Coastal=s late notice
prejudiced USF&G as a matter of law. 
USF&G analogizes its position to that of an insurer whose insured
has allowed a default judgment to be entered against it before informing the
insurer of the suit.  According to
USF&G, it has sustained similar prejudice because it lost anticipated
contractual benefits such as the rights to investigate and defend the suit,
participate in negotiations, and control settlement.  We disagree.








The abstract loss of the rights to
investigate, defend, participate in negotiations, and control settlement are
not sufficient to show prejudice. 
Otherwise, delaying notice to the primary insurer until after settlement
would always result in forfeiture of coverage, because the settlement would
necessarily foreclose the insurer=s participation.  Such a 
result is not consistent with our case law.  Texas law does not presume prejudice merely
from settlement without the insurer=s consent.  Comsys Info. Tech. Servs., Inc. v. Twin
City Fire Ins. Co., 130 S.W.3d 181, 192 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied). 
Moreover, unlike an insured who has permitted a default judgment against
it, Coastal did not cause USF&G to lose these contractual rights.[3]  USF&G was not barred from investigating
the case, although it chose to investigate at a pace that lagged behind the
settlement negotiations.  As Harless
indicated in his deposition, USF&G did not attempt to complete its
investigations before trial or settlement, choosing instead to rely on the
present declaratory judgment action to resolve the coverage issues:

Counsel:      After you were told after the mediation
that negotiations were continuing, did you have a heightened sense of urgency
to resolve the coverage issue?








Harless:       I mean, not really.  It justCas a practical matter, it just, to me, wasn=t resolvable.

Counsel:      Why do you sayC

Harless:       In that short amount of time.

Counsel:      Why do you say it was not resolvable?

Harless:       Well, because ultimately, I believe, you
knowCultimately, coverage would need to
be decided by filing a declaratory judgment. 

Notably, Harless did schedule an appointment to review
the litigation file of the attorneys retained by Lexington to represent
Coastal, but scheduled this appointment for a date more than two weeks after
receiving notice of the suit, and just five days before the trial setting:

Counsel:      Okay. 
Why did you wait to schedule a trip down to Corpus until July 5th?

Harless:       No particular reason.  I mean, that just seemed to be the date we
agreed on.

Counsel:      That would have been five days before the
scheduled trial?

Harless:       If you=re telling meCif you=re telling me that it=s five days, then that=s right.

Counsel:      Okay. 
Did you believe five days would have given you enough time to have made
your investigation?

Harless:       I=m not sure.

Counsel:      Did [USF&G] have any limitation on
your ability to travel from Houston to Corpus Christi?

Harless:       No.

Counsel:      Is there some reason that you didn=t call a lawyer down in Corpus
Christi, someone from Bren & Bren or Royston & Rayzor to go over and
look at the Barger firm file?

Harless:       No.

Counsel:      Did you have the ability to do that?

Harless:       Yes.








Harless attended the meeting scheduled for reviewing
the litigation file, and USF&G has produced no summary judgment evidence
that the evidence developed by Coastal=s defense
attorneys was deficient, or that USF&G=s investigation
was otherwise impaired.  

In sum, Coastal=s delay in
notifying USF&G of the Lopez suit did not prevent USF&G from
subsequently investigating the claims, defending the suit, or controlling
settlement negotiations.  Importantly,
when USF&G was notified of the suit, the defense and negotiations were
ongoing, and under the terms of the policy, USF&G had the right to assume
control of both.  There is simply no
indication that USF&G chose to do so. 


Therefore, we conclude the summary
judgment cannot be sustained on the basis of late notice.

B.      Voluntary Payment

USF&G also argued in its summary
judgment motion that Coastal=s failure to
obtain USF&G=s consent before settlement rendered the
settlement payments voluntary.  Coastal,
COIL, and Lexington argue on appeal that USF&G=s summary judgment
cannot be sustained on this basis because USF&G failed to show the settlement
payments were voluntary and prejudicial. 
We agree.








The provision at issue states, ANo insureds will,
except at their own cost, voluntarily make a payment, assume any obligation, or
incur any expense, other than for first aid, without our consent.@  Here, USF&G has not established that its
insured voluntarily paid the settlement. 
AAn insurer who
pays a third-party claim against its insured is not a volunteer if the payment
is made in good faith and under a reasonable belief that the payment is
necessary to its protection.@  Keck, Mahin & Cate v. Nat=l Union Fire Ins.
Co. of Pittsburgh, PA, 20 S.W.3d 692, 702 (Tex. 2000).  An excess insurer=s payment to settle
a suit against the insured is presumptively involuntary for subrogation
purposes.  Id. (citing Argonaut
Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 543 (Tex. App.CCorpus Christi
1993, writ denied)).  USF&G does not
assert that COIL and Lexington funded the settlement without good faith and a
reasonable belief that the payment was necessary for their own protection.

Even assuming arguendo that the settlement
payments were voluntary, USF&G failed to show the settlement was
prejudicial.  All parties acknowledge
that Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 691 (Tex. 1994)
requires an insurer to demonstrate that the insured prejudiced the insurer by
settling an underlying liability claim without the insurer=s consent before
coverage will be denied; however, USF&G argues that the holding and the
reasoning of Hernandez are specific to uninsured/underinsured motorist (AUIM@) claims.  We disagree. 

In Hernandez, the insured settled a
case against an underinsured motorist without the consent of his UIM
carrier.  The carrier argued the
settlement voided coverage because the insured failed to obtain the carrier=s written consent
as required by the policy.  See id.
at  692, n.1. 
The Court held that only a material breach voids coverage, and a breach
that is not prejudicial is not material. 
Id. at 693.  The Court
therefore analyzed the materiality of the breach to determine if the breach
deprived the insurer of an anticipated benefit from the insurance
contract.  Within the context of an
underinsured motorist claim, the insurer=s anticipated benefit from the
insurance contract was Aa valuable subrogation right.@ 
Id. at 692.  Although the
insured=s settlement extinguished the
subrogation right, the Court concluded the breach was not prejudicialCand therefore, not materialCwhen the subrogation right had no
value because the underinsured motorist was judgment-proof.  








Hernandez was expressly decided on the fundamental principle of
contract law that a material breach by one contracting party excuses
performance by the other party, and an immaterial breach does not.  See id. at 692 (AInsurance policies are contracts, and
as such are subject to rules applicable to contracts generally . . . A
fundamental principle of contract law dictates that when a party to a contract
commits a material breach of that contract, the other party is discharged or
excused from any obligation to perform.@). 
This principle is not limited to UIM policies.  See, e.g., Comsys Info. Tech. Servs., 130 S.W.3d at
192.

USF&G has produced no evidence that
the settlement prejudiced it, but instead argues that if it is required to show
prejudice, then the settlement of the Lopez suit prejudiced it as a
matter of law.  USF&G claims that by
settling the case, Coastal, COIL, and Lexington deprived USF&G of the
opportunity to participate in the defense and settlement processes, and placed
USF&G in the same posture as one who is presented with a final, appealable
judgment and told to pay it.[4]      








Coastal, COIL, and Lexington presented
evidence that the settlement did not prejudice USF&G.  Walter Zimmerman, an adjuster with more than
forty years of experience, offered his expert opinion that the settlement paid
to settle the Lopez suit was Amore than
reasonable.@  In
addition, Coastal, COIL, and Lexington presented evidence indicating how a jury
would value the Lopez claims. 
Three other plaintiffs sued Coastal=s parent company,
Coastal Corporation, in a separate suit for personal injuries resulting from
the same explosion.  Coastal Corp. v.
Torres, 133 S.W.3d 776, 777 (Tex. App.CCorpus Christi
2004, pet. denied.).  The Torres plaintiffs
alleged that Coastal=s parent company was negligent and grossly
negligent because it controlled Coastal=s budget,
withholding funds for inspectors and safety maintenance in a way that directly
caused the plaintiffs= injuries. 
Id. at 777B79. 
After a trial, a jury awarded the Torres plaintiffs $122.5
million.  Id. at 778.  The 
Thirteenth Court of Appeals reversed the judgment on the grounds that
Texas does not recognize a cause of action against a parent company for
negligent control of the subsidiary=s budget, and
emphasized that the Torres plaintiffs did not claim that Coastal=s parent company
exercised negligent control over operational activities.  Coastal was not a party to the Torres
suit, but was a party to the Lopez suit, and the Lopez plaintiffs
alleged Coastal=s direct negligence caused the
explosion.  Torres therefore
offers some indication of the exposure Coastal and its insurers faced in the
event the Lopez case was tried in the same venue.  

USF&G does not argue that the suit was
settled for an unreasonable amount, but contends that prejudice need not be
monetary.  Nevertheless, USF&G has
produced no evidence of prejudice, monetary or otherwise.  It speculates that it might have settled the
case for less money, but there is no evidence USF&G intended to offer any
settlement funds at all. There is also no evidence that the Lopez
plaintiffs would have accepted a smaller settlement.[5]  Thus, the only evidence pertaining to
prejudice from the settlement indicates that the settlement was reasonable, and
that a jury in Corpus Christi, Texas could likely award the Lopez
plaintiffs more than $7 million. 

Given the existence of fact questions and
USF&G=s failure to provide evidence of
prejudice, summary judgment in favor of USF&G cannot be sustained on this
basis.

C.      Lack of
Cooperation       








USF&G moved
for summary judgment on the additional ground that Coastal=s alleged breach
of its duty to cooperate voided coverage. 
Coastal contends that the summary judgment cannot be sustained on this
basis because USF&G failed to establish that Coastal breached its duty to
cooperate and that the breach, if any, prejudiced USF&G.  We agree.

In its motion for summary judgment,
USF&G argued that Coastal breached its contractual duty to cooperate with
USF&G by failing to notify USF&G of the Lopez settlement and by
requesting coverage for the settlement Aafter the fact [of
settlement].@ 
This argument, however, is without factual or legal support.  The uncontroverted evidence demonstrates that
Coastal requested coverage prior to settlement, and that USF&G was informed
of the mediation, settlement negotiations, and the ultimate settlement
agreement.  USF&G cites no authority
for its contention that requesting coverage evidences a lack of cooperation,
nor do we find this to be the case.

USF&G also contends that Coastal
breached the duty to cooperate by failing to timely provide suit papers and
notice of suit, but this argument simply restates the claim of late notice:

Counsel:      Are you able to tell this jury how Coastal
Refining failed to cooperate with USF&G?

Harless:       To the extent that it=s rolled into the late notice, that
would be about the only thing that I could say.

 

As previously discussed, USF&G has not
demonstrated that late notice caused it to suffer prejudice.  

Finally, USF&G asserts that Coastal
initially failed to provide USF&G with documentation from the Lopez litigation.  This argument is not supported by the record:

Counsel:      Putting aside for a moment the fact that
you had asked for status reports while the lawsuit against the Coastal
Corporation was continuing and there was some initial hesitation to give you
thatC

Harless:       Right.








Counsel:      Cwas there anything else that you ever asked for that you
were refused?     

Harless:       Not to my recollection right now.

Counsel:      Okay. 
And, subsequently, you were given copies of the status reports?

Harless:       I know that we were provided with some
information, but I really couldn=t detail exactly what all that was.

*
* *

Harless:       I never had the occasion to visit with a
Coastal rep who denied me information. 
My dealings were with [Coastal=s counsel].

Counsel:      Okay. 
Did you ever ask to sit down and talk with someone from Coastal
Refining?

Harless:       No.

Counsel:      Was there anything that you ever asked for
that Coastal Refining or Lexington said, AAbsolutely not, no way; we will not provide that to you?@

Harless:       Not that I recall.

Counsel:      Okay.

Harless:       Well, let meClet me back up.  Initially that was told to me after the
case settled, but they had some internal discussions.  And apparently they resolved it to their
satisfaction that they would not be destroying the attorney/client privilege
with regards to the continuing litigation. 
And then subsequent to them figuring that out, they sent me some
information.

(emphasis added). 
The record does not clearly identify the specific documents that were
requested, the date they were requested, from whom they were requested, the
basis on which they were withheld, to what extent they were produced, or the
date of production.  The only written
request for records available for our consideration is contained in USF&G=s letter of June
23, 2000, in which it requested Acopies of all
reports generated by persons who have investigated this accident . . . [and]
reports and information concerning the injury and damages sustained by Mr.
Lopez.@      








Coastal=s defense attorney
Augustin Rivera offered uncontradicted testimony that during his June 23, 2000
conversation with Harless, Rivera told 
Harless he Awas available to meet with [Harless] at
any time to provide him with whatever information he needed to get up to speed
on where we were in the case.@  The record further shows that USF&G
scheduled the meeting to take place on July 5, 2000, and that the meeting did
take place on that date.  There is no
evidence that the materials USF&G requested were not produced at the
meeting.  Thus, USF&G has not
established that Coastal failed to cooperate. 

In addition, it was USF&G=s burden to prove
not only that Coastal failed to cooperate, but that this failure prejudiced
USF&G.  See Struna, 11 S.W.3d
at 360 (stating that it is the insurer=s burden to prove
that the insured=s failure to cooperate prejudiced the
insurer).  USF&G offered no evidence
that Coastal=s alleged lack of cooperation caused
prejudice.

Because the summary judgment proof does
not show that Coastal failed to cooperate and that any such failure prejudiced
USF&G, the summary judgment cannot be supported on those grounds.

V.  Conclusion

We hold USF&G
failed to establish that Coastal violated its duty to cooperate or that
USF&G was prejudiced by Coastal=s late notice of
the Lopez plaintiffs= claims, by the
other carriers= settlement of the Lopez suit, or
by Coastal=s alleged lack of cooperation.  Because the summary judgment in favor of
USF&G cannot be affirmed on any of the grounds presented, we reverse the
judgment of the trial court, and remand the case for further proceedings
consistent with this opinion.

 

/s/      Eva
M. Guzman

Justice

 

Judgment rendered and Opinion filed May 30, 2006.

Panel consists of Justices Fowler, Edelman, and
Guzman.











[1]  The firm has
since changed its name to Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.





[2]  The record is
unclear as to the exact date on which the notice was received, but USF&G
admits that it was received by June 20, 2000.





[3]  Kimble v.
Aetna Cas. & Sur. Co., 767 S.W.2d 846, 850B51 (Tex. App.CAmarillo
1989, writ denied) is instructive on why the entry of a default judgment
generally leads to the presumption that an insurer has been prejudiced as a
matter of law.  In Kimble, the
insurer learned of the suit after a default judgment was entered, but before
the judgment became final.  Id. at
848.  The insured argued that the insurer
had not been prejudiced because it could move for a new trial.  Id. at 850.  In rejecting that argument, the Seventh Court
of Appeals explained the particular consequences of the default judgment that
rendered it prejudicial: 

In contrast . . . to a trial on the merits where a
defendant may expect that a plaintiff must establish its claims by a
preponderance of the evidence, the burden is upon the movant for a new trial to
meet a fairly rigorous standard before such a movant is entitled to a new
trial.  It seems clear that [the insurer],
by virtue of the default judgment, has been substantially prejudiced by that
change in position.  Moreover, under the
facts of this case, it is by no means certain that [the insurer], standing in
the shoes of its insured, could have established its entitlement to a new
trial.  If it was unable to have the
default judgment set aside, the prejudice suffered by [the insurer] is
obvious.  

Id. at 851.  

Kimble does not stand for the proposition that only a
default judgment prejudices an insurer. 
Rather, analysis of Kimble and similar cases makes clear that a
showing of a material change in position is necessary to establish
prejudice.  It was not the fact of a
change in position, but the particular substance of the change that made the
judgment prejudicial.  Prior to the
judgment, the insurer could escape liability on a covered claim if the
plaintiff failed to meet its burden of proof. 
After entry of the default judgment, the insurer could no longer defend
against the underlying claims unless it first met a new burden of proof.  It would now have to show (a) its insured=s failure to answer or appear was not intentional or
the result of conscious indifference, but was instead the result of accident or
mistake, (b) the insured has a meritorious defense, and (c) granting a motion
for new trial would not cause any delay or injury to the third party
claimant.  See Craddock v. Sunshine
Bus Lines, Inc., 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). 
The Kimble court implied
that, on the facts of the case presented, the insurer might be unable to
demonstrate a meritorious defense while Astanding
in the shoes of its insured.@  Kimble,
767 S.W.2d at 850B51.  In
addition, the insurer would have to prove that the insured=s failure to answer or appear was the result of
accident or mistake, a threshold issue which would not have arisen in the
absence of the default judgment.  As a
result, the judgment caused actual prejudice to the insurer, whereas the cure
for that prejudice existed only in theory. 
Because the Apotential@ cure
did not outweigh the Aactual@ prejudice, prejudice was presumed as a matter of law.





[4]  In support of
this argument, USF&G relies upon West Bend Co. v. Chiaphua Indus., Inc.,
112 F. Supp. 2d 816 (E.D. Wis. 2000), aff=d, 11 Fed.
App=x 616 (7th Cir. 2001) (applying Wisconsin law).  In West Bend, a federal district court
was asked to predict whether Wisconsin state courts would find insurance
coverage continues when the insured breaches a voluntary payment clause without
causing prejudice to the insurer.  112 F.
Supp. 2d at 826.  The court did not
answer that question; rather, it held that an insurer suffered prejudice as a
matter of law where the insured did not report the existence of the liability
suit until after the suit had settled.  Id.
at 823.  Both the law and the facts
of West Bend are distinguishable from the present case.  In Texas, it is established that an insurer
may not void coverage based on voluntary settlement unless it can demonstrate
that the settlement caused prejudice to the insurer.  See, e.g., Hernandez, 875
S.W.2d at 694 (when the insurer is not prejudiced by the insured=s breach, the breach is not material, and the insurer
is not excused from performance); Comsys Info. Tech. Servs., Inc., 130
S.W.3d at 192 (Texas law does not presume prejudice in
settlement-without-consent cases); see also Hanson Prod. Co. v. Ams. Ins.
Co., 108 F.3d 627, 631 (5th Cir. 1997) (noting the Amodern trend in favor of requiring proof of prejudice@). 
Additionally, USF&G was aware of the lawsuit and was invited to
participate in the continuing negotiations prior to settlement. 





[5]  It is perhaps equally likely that
the plaintiffs= demands would have increased
proportionately as the number of participating insurers and policies increased,
so that USF&G=s participation could have made
settlement more costly.