Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-11-00439-CV

Maria **TORRES**, as Next Friend of Dareion Torres,
Appellant

v.

**DILLEY YOUTH ATHLETIC ASSOCIATION** and Little League Baseball, Inc., et al.,
Appellees

From the 218th Judicial District Court, Frio County, Texas
Trial Court No. 10-06-00186CVF
Honorable Stella Saxon, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Rebecca Simmons, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  August 8, 2012

AFFIRMED

Dareion Torres suffered a severe injury while playing on a pump jack located at a miniature golf course adjacent to a little league baseball field. Maria Torres, as Next Friend of Dareion Torres, appeals a summary judgment granted in favor of appellees, Dilley Youth Athletic Association, Little League Baseball, Inc., Russell Foster, and Dilley Little League. Torres contends the trial court erred in granting a summary judgment with regard to her negligent undertaking claim because appellees' motion did not address that claim. Torres also

contends that summary judgment was erroneous because genuine issues of material fact were raised with regard to whether: (1) appellees controlled the miniature golf course where the pump jack was located; (2) appellees undertook a duty to safeguard the area where the pump jack was located; and (3) appellees created a dangerous condition by removing a fence that was located between the Little League baseball field and the miniature golf course. We affirm the trial court's judgment.

## BACKGROUND

Dareion was severely injured when his foot was crushed by a pump jack used as a decoration on a miniature golf course. The miniature golf course, which had been closed by the City of Dilley for some time, was adjacent to a Little League baseball field, and both were located within a park owned by the City of Dilley. Appellees were given exclusive use of the baseball field for a few months of each year pursuant to a gentlemen's agreement.

Torres sued appellees, asserting claims for negligence, premises liability, and negligent undertaking. After the trial court granted summary judgment in favor of appellees, Torres moved for clarification of the trial court's order, asserting appellees' motion did not address her negligent undertaking claim, so summary judgment was improper as to that claim. After a hearing, the trial court denied the motion to clarify, and the trial court stated in its order that the motion for summary judgment addressed the negligent undertaking claim.

## STANDARD OF REVIEW

The standard of review for a summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true;

and (iii) every inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). "A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim." *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

## SCOPE OF MOTION FOR SUMMARY JUDGMENT

In her first issue, Torres contends the trial court erred in concluding that appellees' motion for summary judgment addressed her negligent undertaking claim. If the motion failed to address the negligent undertaking claim, the law does provide that summary judgment may be improper with regard to that claim. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297-98 (Tex. 2011) (noting general rule that summary judgment must be based on ground expressed in motion, but recognizing exception to rule "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case"). In order to evaluate whether appellees' motion challenged Torres's negligent undertaking claim, we must review the elements included in such a claim, Torres's pleadings, and the motion.

The negligent undertaking claim asserted by Torres is based on Section 324A of the Restatement (Second) of Torts. That section states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a)　his failure to exercise reasonable care increases the risk of such harm, or
>
> (b)　he has undertaken to perform a duty owed by the other to the third person, or
>
> (c)　the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). Texas courts have adopted Section 324A of the Restatement. *See Lowe's Home Ctrs., Inc. v. GSW Marketing, Inc.*, 293 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] pet. denied); *Builders Transport, Inc. v. Grice-Smith*, 167 S.W.3d 1, 9-10 (Tex. App.—Waco 2005), *judgm't withdrawn and superseded on reh'g*, 167 S.W.3d 18 (Tex. App.—Waco 2005, pet. denied); *Coastal Corp. v. Torres*, 133 S.W.3d 776, 780 & n.5 (Tex. App.—Corpus Christi 2004, pet. denied); *Seay v. Travelers Indem. Co.*, 730 S.W.2d 774, 775-76 (Tex. App.—Dallas 1987, no writ); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837-38 (Tex. 2000) (citing section 324A but applying section 323).

In Torres's second amended petition, she listed fifteen separate acts of negligence in the section of her petition entitled "Negligence of Defendants." At the hearing on the motion to clarify, Torres contended the fifteenth alleged act pled a negligent undertaking claim by alleging appellees were negligent "In failing to perform DLL and FOSTER's duties under the Little League Baseball Charter Agreement, with reasonable skill and diligence so as not to injure a person by their performance."[1] In their motion for summary judgment, appellees alleged that "city employees have testified that there was no agreement between the City of Dilley and the Defendants regarding the miniature golf course." In the absence of an agreement or undertaking by appellees to render services with regard to the safety of the miniature golf course, Torres would be unable to prevail on her negligent undertaking claim. Therefore, we hold appellees' motion sufficiently addressed an element of Torres's negligent undertaking claim, i.e., whether there was an undertaking to render services with regard to the miniature golf course, especially given the manner in which that claim was alleged in Torres's second amended petition.

---

[1] Because it is not relevant to our analysis, we do not further explore how this allegation extended to Little League Baseball, Inc., for which the petition separately listed acts of negligence, or to Dilley Youth Athletic Association which is not alleged to have failed to perform the alleged duties.

## CONTROL OF PUMP JACK AREA

Torres contends the trial court erred in granting summary judgment on her premises liability and negligent undertaking claims because a genuine issue of material fact existed with regard to whether appellees exercised control over the area where the pump jack was located. Appellees respond that the incidental contacts they had with the miniature golf course did not constitute sufficient control to impose liability on the appellees.

All parties agree appellees could not be liable for the pump jack unless they "assumed sufficient control over the part of the premises that presented the alleged danger so that the [appellees] had the responsibility to remedy it." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). The term "control" is defined as "the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." *Gunn v. Harris Methodist Affiliated Hospitals*, 887 S.W.2d 248, 252 (Tex. App.—Fort Worth 1994, writ denied).

Torres cites to evidence in the record showing appellees would retrieve litter and foul balls from the miniature golf course, baseball players would warm up on a portion of the miniature golf course adjacent to the baseball field, and appellees occasionally used a water spigot or faucet located on the miniature golf course.[2] We hold this evidence does not raise a

---

[2] The evidence cited by Torres includes the following deposition testimony. Juanita Gonzalez, the City Secretary, testified as follows:

> Q. Okay. During the games that you've attended, have you ever seen any Dilley Little League teams using the miniature golf course within the city park?
>
> A. They throw the balls on the field, they practice throwing balls on the field where the golf course is. When they — while the games are taking place there's trash, and there's actually a volunteer from the organization that walks the kids through the golf course behind the gazebo, around the back of the field all the way around the concession stand picking up trash. After they are done they give them a snow cone or whatever they want from the refreshment. Have I seen them on the field, yes, I have.
>
> Q. Have they used it for practices?
>
> A. It's open. There's no fencing on the side where the restroom is. They actually line up and throw the balls at each other, they're practicing, warming up on the golf course. Not necessarily on the trail of the golf course, but it's part of the golf course because it's all open. They're right there.

genuine issue of material fact with regard to whether appellees controlled the miniature golf premises.  Evidence was presented through the testimony of several witnesses that appellees had no authority with regard to the miniature golf course, which was maintained by the City of Dilley.[3]  Evidence was presented with regard to the City's actions relating to the miniature golf

---

Arnold Zepeda, a City park maintenance employee, testified:
Q.      Do you know who removed that section of fencing [between the miniature golf course and the baseball field]?
A.      Nope.  But I seen — there used to be a faucet there, and Little League used to get a water hose and they used to water it ….

Russell Foster, the President of Dilley Little League, testified as follows:
Q.      Foul balls, generally speaking, how far out do they usually go?
A.      They come right back here into the — into the putt-putt course.  That's why the city removed that fence and they removed that connection.
Q.      Let me ask you this.  Do they still give Cokes and snow cones for bringing foul balls back to the concession stand?
A.      I do.  Some of the people in the concession stand don't.  But, yes.

Freddie Martinez, another City employee, also testified that he had seen foul balls go into the area where the pump jack was located and sometimes saw children retrieve them.

[3] Juanita Gonzalez, the City's secretary, testified as follows:
Q.      Okay.  Do you know who maintains the area where the miniature golf is located?
A.      It would have to be the city.
                                                    ****
Q.      So, for example, if the grass needed to be cut within the area where the miniature golf course is located, who takes care of that?
A.      The miniature golf would be the city.
Q.      Okay.  If there was a complaint about the miniature golf course, who would go and fix that or take care of that complaint?
A.      The city.
                                                    ****
Q.      Okay.  As far as you know, are you aware of the Dilley Little League making any kind of repairs within the miniature golf course area?
A.      Not the miniature golf course area.
Q.      Would they have had to seek the city's permission before doing that?
A.      Yes, ma'am.

Melissa Gonzalez, the City's administrator, testified as follows:
Q.      Any type of problem or repair that was out at the miniature golf course, would it be the public works department's responsibility to make those repairs?
A.      Yes, ma'am.
Q.      And assuming that somebody in the general public called the clerk's office and said they had a problem with the miniature golf course, would that problem be referred to the public works department?
A.      Yes, ma'am.
Q.      If there's any problem at the miniature golf course, would that ever be referred to the Dilley Little League?
A.      No, ma'am.

course, including mowing and maintaining the property, the City's efforts to contract the operation of the miniature golf course to a third party, and its plans to replace the miniature golf course with an open park and picnic space. In fact, evidence was presented that a few days after Dareion's accident, the City removed the pump jack and immediately began demolishing the miniature golf course. Although the evidence cited by Torres establishes appellees had incidental contact with the miniature golf course, we hold the contacts were insufficient as a matter of law to establish appellees "assumed *sufficient* control over the part of the [miniature golf course] that presented the alleged danger so that the [appellees] had the responsibility to remedy it." *Brown*, 80 S.W.3d at 556 (emphasis added); *see also Newsom v. Whittington*, 953 S.W.2d 410, 412-13, 415 (Tex. App.—Texarkana 1997, pet. denied) (occasional use of gate on adjacent property insufficient evidence to establish control).

## UNDERTAKING OF DUTY TO SAFEGUARD PUMP JACK AREA

Torres also contends the record is replete with evidence that Dilley Little League was responsible for safeguarding the premises for the safety of the players and spectators, including

---

Q.  Would that be referred to Dilley Youth Athletic Association?
A.  No, ma'am.
Q.  Would that be referred to Rusty Foster individually?
A.  No.
Q.  Did Rusty Foster, Dilley Youth Athletic Association or Dilley Little League have the right to go in there and make any changes to the miniature golf course?
A.  No.
Q.  If they wanted to make any changes, would they have to request permission before doing so?
A.  Yes, ma'am.

Rudy Olivares, the City's public works director, testified as follows:
Q.  Does Dilley Little League have control over this area where the miniature golf course is?
A.  No.
Q.  Does Rusty Foster individually have the right to control this area?
A.  No, ma'am.
Q.  For example, does he have a right to come in and remove the barbeque pits and go put them in his backyard?
A.  No.
Q.  Does he have the authority to go and take benches and move them to the baseball field to provide extra seating if the wants to?
A.  No.

the promulgation of a safety program for the benefit of the players and spectators. Appellees respond that the safety plan and the facility survey used in connection therewith do not mention the miniature golf course or pump jack, but only pertain to the areas relating to the baseball field, including the baseball field, the fences, the dugouts, the concession stand, the restrooms, and the bleachers.

The record contains no evidence that the inspection undertaken pursuant to the safety program included an inspection of the miniature golf course. The record also contains no evidence of any agreement by appellees to render any services in relation to the miniature golf course. "[S]ection 324A imposes a duty to perform without negligence only the task that the actor has undertaken to accomplish." *Lowe's Home Ctrs., Inc*., 293 S.W.3d at 291; *see also Torrington Co.*, 46 S.W.3d at 839 ("person's duty to exercise reasonable care in performing voluntarily assumed undertaking is limited to that undertaking") (quoting *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991)). "Although this rule expands the class of persons to whom the duty of care is owed, it does not expand the scope of the undertaking." *Id*. We hold no evidence was presented to raise a genuine issue of material fact with regard to any undertaking by appellees to perform a task or services with regard to the miniature golf course.[4]

---

[4] One Texas court appears to have blended the negligent undertaking claim under section 324A with one of the "assumed duty" exceptions to the general rule that ownership or control must be shown to impose liability for a premises defect. *See Guereque v. Thompson*, 953 S.W.2d 458, 467-68 (Tex. App.—El Paso 1997, pet. denied). Under the "assumed duty" exception, a private person who agrees to make safe a known, dangerous condition of real property may be liable for the failure to remedy the condition. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986). From her brief, it does not appear that Torres is attempting to argue appellees agreed to make safe a known, dangerous condition. Even if Torres was attempting to rely on this "assumed duty" exception, the summary judgment evidence conclusively established that the condition of the pump jack was not a "known" dangerous condition.

## CREATION OF DANGEROUS CONDITION

Finally, Torres contends appellees are liable because they created the dangerous condition by removing a section of a fence that allowed access to the miniature golf course from the baseball field. The Texas Supreme Court has recognized that "a private person who has created the dangerous condition may be liable even though not in control of the premises at the time of injury." *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986).

Appellees respond that the evidence conclusively established they did not remove the fence. Given the applicable summary judgment standard of review, however, we conclude the testimony establishes a fact issue regarding whether appellees or the City removed the section of the fence in question.[5]

---

[5] Arnold Zepeda, the City employee, testified as follows:

Q.   And there's a gap in the fencing right there. Do you see that gap?
A.   Yes, ma'am.
Q.   Did you remove that section of fencing?
A.   Nope.
Q.   Do you know who removed that section of fencing?
A.   Nope. But I seen — there used to be a faucet there, and Little League used to get a water hose and they used to water it when there as Allstar — Allstars or something like that, they used to put that water hose to right there. So it was probably them that did it. It wasn't me.

Russell Foster, the President of Dilley Little League, testified as follows:

Q.   You're saying there was some access. Did they do away with this fence?
A.   They cut that out about — right about this area right here, and removed the gate, removed the link to the — to the restrooms shutting it off two, three — maybe three years ago.
Q.   To allow spectators of the game to come into this area to get the balls?
A.   To get the balls. And then to allow people to go between — pass between the pool and — because, otherwise, they had to go out in the parking lot to pass between the pool and the Little League.
****
Q.   Did Dilley Little League ask the city to remove either section of the fence?
A.   Like I said, it was just in conversation with Rudy, he — My recollection of it, he suggested that it would — instead of them having to come out all the time and unlock the gate, leave it unlocked and us lock it, whatever, that it would be easier just to cut that off. And asked if we had any objections. Of course, I told him no.
Q.   Did you think he was asking your permission to do that?
A.   No. I mean just — Rudy and I went to high school together. And Rudy, he comes to me and he'll ask me, you know, whatever, what I think about it, if it is going to make the park better for the kids and everything else. And that's just, you know, the way it was.
Q.   Was part of that it [sic] the city employees were tired of having to go down there with the key and open it up?
A.   Correct.

Appellees next respond that even if they removed the section of the fence, the removal of the fence did not create the dangerous condition because the pump jack was the dangerous condition.  We agree.

In *Guereque v. Thompson*, a ten-year-old boy tragically drowned while trying to retrieve a ball from a canal abutting the rear of a trailer park.  953 S.W.2d at 460.  The boy's parents sued the owners of the trailer park, alleging the fence guarding the trailer park residents from the canal was improperly erected and was in poor repair, with large gaps in it, through which a child could pass.  *Id*. at 460, 461.  The property manager of the trailer park testified in his deposition that he informed the trailer park owners that the fence was in serious disrepair and violated the El Paso City Code; however, the owners told the property manager not to do anything unless the city inspector required the repair of the fence.  *Id*. at 461.

In analyzing whether the trailer park owners could be held liable for creating the dangerous condition that caused the accident, the El Paso court noted that the dangerous condition exception to the control requirement applied only if the trailer park owners actually created the instrumentality that caused the injury or death.  *Id*. at 468.  The court then noted the "dangerous condition" was the canal, not the fence.  *Id*.  Because the fence did not cause the child's death, the evidence failed to establish the trailer park owners created the dangerous condition in question.  *Id*.; *see also Science Spectrum, Inc. v. Martinez*, 924 S.W.2d 910, 914 (Tex. 1997) (Enoch, J., dissenting) (dissenting to majority's refusal to address whether defendant created dangerous condition and concluding defendant's erection of wall over electrical wiring did not create dangerous condition because dangerous condition was "hot" electrical wire running through an adjacent property); *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 55 (Tex.

---

In his deposition testimony, Rudy Olivares, the City's public works director, denied authorizing the removal of the section of the fence.

1997) (failure to repair hole in fence allowing access by criminals did not create dangerous condition of criminal activity).

Similarly, in this case, the evidence conclusively established appellees did not create the dangerous condition that caused Dareion's injury because appellees had no involvement with the pump jack or the operation and maintenance of the miniature golf course. Because the removal of the section of the fence did not create the dangerous condition that caused Dareion's injury, appellees were not liable to Torres under this theory of liability as a matter of law.

## CONCLUSION

Accordingly, we overrule Torres's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice