Opinion of May 30, 2006 Withdrawn; Reversed in Part and Remanded and
Substitute Opinion filed March 8, 2007








Opinion
of May 30, 2006 Withdrawn; Reversed in Part and Remanded and Substitute Opinion
filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00651-CV

____________

 

COASTAL REFINING & MARKETING,
INC., COASTAL OFFSHORE INSURANCE LIMITED, AND LEXINGTON INSURANCE COMPANY, Appellants

 

V.

 

UNITED STATES FIDELITY AND GUARANTY
COMPANY,
Appellee

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 00-43872

 



 

S U B S T I T U T E    O P I N I O N

We overrule appellee=s motion for
rehearing, withdraw our previous opinion, and issue this substitute opinion in
its place.








In this insurance coverage dispute, the insurer filed suit
seeking a declaration that it had no duty to reimburse its insured and two
other carriers for the costs they incurred in settling a personal injury suit. 
The insurer moved for traditional summary judgment on the grounds that the
insured (1) did not notify the insurer of the suit until less than a month
before trial, (2) settled the suit without the insurer=s consent, and
(3) failed to cooperate with the insurer.  Because the insurer produced no
evidence that the actions of its insured or the settling carriers prejudiced
the insurer and no evidence that the insured failed to cooperate, we reverse
the trial court=s summary judgment on these issues and
remand the case for further proceedings consistent with this opinion. 

I.  Factual and Procedural History

Weaver Industrial Service, Inc. (AWeaver@) entered into a AService Contract@ with Coastal
Refining & Marketing, Inc. (ACoastal@).  The Service Contract
required Weaver to supply labor, supervision, and equipment for maintenance and
repairs to Coastal=s refinery equipment and property.  The
Service Contract also required Weaver to designate Coastal as an additional
insured on insurance policies providing coverage for all claims arising out of
Weaver=s work.  Coastal
required these policies to be primary to all other valid available insurance. 
Weaver added Coastal to its United States Fidelity and Guaranty Company (AUSF&G@) commercial
general liability and umbrella policies.  These policies are occurrence-based,
as opposed to claims-made policies, and provide coverage for property damage
and bodily injury.  

On May 13, 1999, Weaver=s employee,
Rolando Lopez, was one of several people injured in an explosion at Coastal. 
Lopez and his wife sued Coastal and its parent company, Coastal Corporation, in
Nueces County, Texas for negligence and gross negligence (the ALopez suit@). 








Without notifying USF&G of the suit, Coastal retained
the firm of Barger, Hermansen, McKibben & Villarreal, L.L.P.[1]
as defense counsel.  On May 13, 2000, the Lopez suit failed to settle at
a court-ordered mediation during which the plaintiffs demanded $19 million. 
After the mediation, Coastal tendered its $500,000 self-insured retention,
$500,000 from a fronting policy, and $1 million from Coastal Offshore Insurance
Limited (ACOIL@), Coastal=s captive
insurance company, to its excess insurer, Lexington Insurance Company (ALexington@).  Lexington
assumed the defense of the case through the same counsel, and settlement
negotiations continued.  

On or about June 15, 2000, Coastal=s defense attorneys
wrote to Weaver and Whitney Vaky Insurance Agency, the agent and producer of
the USF&G policies, and made a Ademand for
insurance coverage@ as an additional insured under the USF&G
policies.  The demand letter included copies of the latest petition in the Lopez
suit, the Service Contract between Weaver and Coastal, and the certificate of
liability insurance showing Coastal as an additional insured on the USF&G
policies.  The letter informed Weaver and the agency that a mediation was
scheduled for June 17, 2000, and requested Athe presence of
the appropriate representatives at the mediation.@   Weaver=s notice was sent
in accordance with a provision in the Service Contract requiring all notices
concerning liability or indemnity to be sent to Weaver at a specified fax
number.  The record does not show the date Weaver received the notice, but the
parties agree that the notice was forwarded to USF&G (presumably by Weaver
or Whitney Vaky) by June 19 or 20, 2000.[2]








USF&G did not respond to the letter until five days
after the referenced mediation and at least three days after receiving the
demand.  On June 23, 2000, USF&G senior claim specialist Mitchell Harless
telephoned Coastal=s attorneys and learned that the Lopez plaintiffs
had demanded $8.5 million at the second mediation, and Lexington had offered $6
million to settle the case.  USF&G also learned that trial was set for July
10, 2000, and that settlement negotiations were continuing.  In a letter to
Coastal=s attorneys on
June 23, 2000, Harless reserved USF&G=s right to
disclaim coverage due to late notice and to contest Coastal=s status as an
additional insured on the basis that Lopez=s injuries did not
arise out of Weaver=s work for Coastal.  USF&G also
requested Acopies of all reports generated by persons who have
investigated this accident . . . [and] reports and information concerning the
injury and damages sustained by Mr. Lopez.@

On June 29, 2000, USF&G informed Coastal=s attorneys that
USF&G Ahad insufficient information about liability or
damages to respond to the June 15 demand letter,@ and arranged to
visit the offices of Coastal=s attorneys on July 5, 2000 to review the
litigation files in the Lopez suit.  USF&G was aware that settlement
negotiations were continuing at that time.

 Using funds supplied by Coastal, COIL, and Lexington,
Coastal=s defense
attorneys settled the Lopez suit for $7 million on June 30, 2000.  After
learning of the settlement, USF&G filed suit against Coastal seeking a
declaration that USF&G had no duty to indemnify Coastal for cost of settlement. 
COIL and Lexington intervened in the suit.  The court granted USF&G=s motion for
traditional summary judgment without stating the grounds for its decision, and
Coastal, Lexington, and COIL appeal.[3]








II.  ISSUE PRESENTED

The sole issue presented for our review is whether the
trial court erred in granting USF&G=s motion for
summary judgment.  Appellants Coastal, COIL, and Lexington argue that the
motion was improperly granted because USF&G failed to meet its evidentiary
burden to establish that it was prejudiced by the late notice or settlement of
the Lopez suit, or by Coastal=s alleged failure
to cooperate.  Appellants additionally argue that any breach of the policy=s  prompt notice
of suit, voluntary payment, or cooperation clauses is immaterial, and does not
discharge USF&G=s duty to indemnify Coastal and the
settling carriers for the costs of settlement.  We agree.

III.  STANDARD OF REVIEW








We examine the summary judgment evidence applying familiar
standards of review.  Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex.
App.CHouston [14th
Dist.] 2000, pet. denied).  A summary judgment movant must establish its right
to summary judgment by conclusively proving all elements of the movant=s claim or defense
as a matter of law.  See Tex. R.
Civ. P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex.
2000).  When reviewing a summary judgment, we take as true all evidence
favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).  Under
Texas Rule of Civil Procedure 166a(c), a  party moving for summary judgment
bears the burden to show that no genuine issue of material fact exists and that
it is entitled to judgment as a matter of law.  Id.  We will affirm the
summary judgment if any of the theories presented to the trial court are
meritorious.  Id.

IV.  ANALYSIS

A.      Late Notice

In its motion for summary judgment, USF&G primarily
argued that Coastal unjustifiably delayed notifying USF&G of the Lopez suit,
but it has not reurged this argument on appeal.  Instead, USF&G argues that
the policy=s notice provision is a condition precedent to
coverage, and thus, Coastal was required to comply in order to invoke
coverage.  Because Coastal failed to promptly notify USF&G of the Lopez
suit, USF&G contends it is not required to show that the delay of notice
prejudiced it.  In the alternative, USF&G argues that the delayed notice
prejudiced it as a matter of law.

1.       The
Policy Requires USF&G to Show Prejudice from Late Notice.

USF&G=s first argument is contrary to the plain
language of the policy, which expressly continues coverage unless the insured=s failure to
promptly notify USF&G of the claim prejudices the insurer:

With regard to Bodily Injury and
Property Damage Liability, unless we are prejudiced by the insured=s or your failure
to comply with the requirement, any provision of this Coverage part requiring
you or any insured to give notice of Aoccurrence,@ claim or Asuit,@ or forward
demands, notices, summonses or legal papers in connection with a claim or Asuit@ will not bar
coverage under this Coverage Part.

(emphasis
added).  








Courts must enforce such unambiguous policy language.  See
Fiess v. State Farm Lloyds, 202 S.W.3d 744, 753 (Tex. 2006).  We therefore
reject USF&G=s argument that delayed notice necessarily
voids coverage.

But in rejecting this argument, we note that  compliance
with a notice provision in an insurance policy has often
been characterized as a condition precedent to coverage.  See, e.g., Struna
v. Concord Ins. Servs., Inc., 11 S.W.3d 355, 359 (Tex. App.CHouston [1st Dist.]
2000, no pet.).  And as USF&G correctly points out, the Texas Supreme Court
has previously stated that if an  insured breached a condition precedent
regarding notice, then Aliability on the claim was discharged, and
harm (or lack of it) resulting from the breach was immaterial.@  Members Mut.
Ins. Co. v. Cutaia, 476 S.W.2d 278, 279 (Tex. 1972).  

More recently, however, the significance of characterizing
a notice provision as a condition precedent to coverage has eroded
considerably.  See Lee R. Russ
& Thomas F. Segalla, 13 Couch on Insurance 3d ' 193:25 (2005); see
also Restatement (Second) of
Contracts: Excuse of a Condition to Avoid Forfeiture ' 229 (1981)
(noting that, to the extent that the non-occurrence of a condition would cause
disproportionate forfeiture, a court may excuse the non-occurrence of that
condition unless its occurrence was a material part of the agreed exchange). 
With respect to coverage for bodily injury and property damage, the State Board
of Insurance has issued the following amendatory endorsement applicable to all
general liability policies, which essentially eliminates an insurer=s ability to treat
a notice requirement as a condition precedent to such coverage:

As respects bodily injury liability
coverage and property damage liability coverage, unless the company is
prejudiced by the insured=s failure to comply with the requirement,
any provision of this policy requiring the insured to give notice of action,
occurrence or loss, or requiring the insured to forward demands, notices,
summons or other legal process, shall not bar liability under the policy.

State Bd. of Ins., Revision
of Texas Standard Provision for General Liability PoliciesBAmendatory EndorsementBNotice, Order No. 23080 (March 13, 1973) (ABoard Order@).  








The Board Order significantly changed the law.  Before it
was issued, courts construed notice provisions in insurance policies in
accordance with general contract law.  Thus, an insured=s failure to
provide prompt notice of suit constituted failure of a condition precedent and
excused the insurer=s performance.  Cutaia, 476 S.W.2d
at 279B80.  After the
Board Order, characterization of a notice provision as a condition precedent
has become less significant in policies to which the Order applies.[4] 
Although Texas courts may continue to characterize notice-of-suit provisions as
conditions precedent to coverage, this characterization does not necessarily
excuse the insurer=s performance or result in forfeiture of
coverage.  See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d
170, 173B74 (Tex. 1995)
(characterizing compliance with a notice-of-suit provision as a condition
precedent to the insurer=s liability on an automobile liability
insurance policy, but noting that A[t]he insured=s failure to
notify the insurer of a suit against her does not relieve the insurer from
liability for the underlying judgment unless the lack of notice prejudices the
insurer.@); Liberty Mut.
Ins. Co. v. Cruz, 883 S.W.2d 164, 165 (Tex. 1993) (per curiam) (AAlthough notice,
the condition precedent to the policy, was not given according to the policy,
[the insurer] does not escape liability, unless it was >prejudiced= because of the
lack of notice.@); Blanton v. Vesta Lloyds Ins. Co.,
185 S.W.3d 607, 611 (Tex. App.CDallas 2006, no pet.) (noting that
compliance with a notice provision is a condition precedent to coverage, but
failure to comply with the provision Adoes not absolve
the insurer from the underlying judgment unless the lack of notice prejudices
the insurer.@). 

 








2.       Late
Notice No Longer Bars Coverage of Bodily Injury or Property Claims Absent
Prejudice to the Insurer.

Although our shift away from interpreting a notice
provision as a classic condition precedent can be attributed to the Board
Order, we note that other jurisdictions have also moved away from this
interpretation.  Generally, other states construing similar notice provisions
analyze their breach in one of four ways:

1.       Unexcused or unreasonably late notice voids
coverage without any showing of prejudice (i.e., the classic view of prompt
notice as a condition precedent to coverage);

2.       Unreasonable delay results in a rebuttable
presumption that the insurer has been prejudiced;

3.       Late notice voids coverage only if the
insurer establishes that the late notice was a breach of contract that
prejudiced the insurer=s position; or

4.       If the
policy does not make timely notice a condition precedent to recovery and does
not provide a specific penalty for failure to give notice of the claim or
failure to forward suit papers, the insurer remains liable unless the delay
prejudiced the insurer.

See
Russ & Segalla, supra, ' 193:3 and
authorities cited therein.  








Although Texas law at the time of the Board Order followed
the classic view of prompt notice as a condition precedent to coverage,[5]
the law has not remained static in the intervening years.  When coverage for
bodily injury or property damage is at issue, Texas law now follows the
approach that late notice voids coverage only if the insurer establishes that
the delay prejudiced the insurer=s position.[6] 
As a result, the failure to provide prompt notice in such cases now may be
analyzed in the manner of a breach of contract that is not material unless it
prejudices the insurer.  See Cruz, 883 S.W.2d at 165 (construing an
endorsement virtually identical to the provision at issue in this case and
stating, AAlthough notice, the condition precedent to the
policy, was not given according to the policy, [the insurer] does not escape
liability, unless it was >prejudiced= because of the
lack of notice.@).  Specifically, an insurer is now required to show that it has been prejudiced by the
insured=s failure to give
the insurer notice of a property or bodily injury
claim.  See Harwell, 896 S.W.2d at 174; Cruz, 883 S.W.2d at 165; Struna,
11 S.W.3d at 359. 

3.       To Bar
Coverage of Bodily Injury and Property Claims, Actual Prejudice is Required. 

Whether an insurer is prejudiced by
delayed notice is generally a question of fact.  Struna, 11 S.W.3d at
359B60; see also
P.G. Bell Co. v. United States Fid. & Guar. Co., 853 S.W.2d 187 (Tex.
App.CCorpus Christi
1993, no writ) (reversing summary judgment in favor of insurer where fact
question remained as to whether insurer was prejudiced by default judgment when
insurer had actual notice of suit).  In determining whether an insurer has been
prejudiced, however, the existing case law offers limited guidance.  








Entry of a default judgment will ordinarily constitute
prejudice as a matter of law.[7] 
See, e.g., Cruz, 883 S.W.2d at 165 (holding that delay until after
default judgment is final, when insurer does not otherwise have actual
knowledge of suit, prejudices insurer as matter of law); Ratcliff v Nat=l County Mut. Fire
Ins. Co., 735 S.W.2d 955 (Tex. App.CDallas 1987, writ
dism=d w.o.j)
(determining that an insurer was prejudiced as a matter of law where its
insured provided no notice of suit until default judgment became unappealable);
cf. Allstate Ins. Co. v. Pare, 688 S.W.2d 680 (Tex. App.CBeaumont 1985,
writ ref=d n.r.e.) (stating
that an insurer was not prejudiced by insured=s failure to
forward suit papers prior to default when the insurer actually knew suit had
been filed and knew that default judgment had been rendered against another
defendant).  Some authorities suggest that default judgment is the only
circumstance constituting prejudice.  See P.G. Bell Co., 853 S.W.2d at
191 (presuming that the insurer was not prejudiced by late notice unless notice
was given after a default judgment); 46
Tex. Jur. 3d Insurance Contracts and Coverage ' 944 (1995) (A[G]enerally, an
insured=s failure to
notify the insurance company of a claim filed against it by a third party will
not constitute prejudice unless that notice is given after a default judgment
is taken against the insured.@).  Although we do not foreclose the
possibility that an insurer could be prejudiced by events other than default
judgment,[8]
a close look at the reasons default judgment is prejudicial offers some
guidance in determining when prejudice occurs.








In Kimble v. Aetna Casualty and Surety Co., the
insurer  learned of the suit after a default judgment was entered, but before
the judgment became final.  767 S.W.2d 846, 850B51 (Tex. App.CAmarillo 1989,
writ denied).  The insured argued that the insurer was not prejudiced because
it learned of the suit in time to move for a new trial.  Id.  In
rejecting that argument, the Seventh Court of Appeals explained the particular
consequences of the default judgment that rendered it prejudicial: 

In contrast, then, to a trial on
the merits where a defendant may expect that a plaintiff must establish its
claims by a preponderance of the evidence, the burden is upon the movant for a
new trial to meet a fairly rigorous standard before such a movant is entitled
to a new trial.  It seems clear that [the insurer], by virtue of the default
judgment, has been substantially prejudiced by that change in position. 
Moreover, under the facts of this case, it is by no means certain that
appellee, standing in the shoes of its insured, could have established its
entitlement to a new trial.  If it was unable to have the default judgment set
aside, the prejudice suffered by appellee is obvious.   

Id. at 851.  

As Kimble illustrates, it is not the fact of a
change in position, but the substance of the change that generally renders a
default judgment prejudicial.  Before default judgment, an insurer can escape
liability for a covered claim if the plaintiff fails to meet its burden of
proof.  After a default judgment, however, an insurer can no longer defend
against the underlying claim unless it first meets a new burden of proof on new
issues[9]
when its ability to meet that burden may be in doubt.  As a result, a default
judgment usually causes actual prejudice to an insurer, while the cure for that
prejudice exists only in theory.  The Apotential@ cure does not
outweigh the Aactual@ prejudice.  

Although Kimble and its progeny do not stand for the
proposition that only a default judgment prejudices an insurer, such
cases illustrate the requirement that an insurer must demonstrate a material
change in position to establish prejudice.  Courts finding prejudice have done
so based on evidence of prejudice actually sustained, not on merely speculative
or potential prejudice.  








This approach is consistent with the cases from those
states that follow an approach similar to that of Texas: the insured=s breach of a
notice provision is material when the insurer has sustained Aactual@ prejudice.  The
requirement of Aactual prejudice@ means that the
insurer may not disclaim coverage on the basis of prejudice that is only
theoretical or presumed merely from the length of delay.  See, e.g., Gen.
Acc. Ins. Co. v. Scott, 669 A.2d 773 (Md. Ct. Spec. App. 1996) (holding
that an insurer who receives notice before trial cannot rely on delayed notice
alone to show prejudice); Wilson v. Progressive N. Ins. Co., 868 A.2d
268 (N.H. 2005) (noting that, although the insurer need not show actual loss of
evidence to demonstrate prejudice from insured=s delay in
providing notice, it must at the very least provide the court with facts
showing prejudice and not merely surmise that it may be prejudiced because
certain events may have occurred in the abstract during the period of delay);
Canron, Inc. v. Fed. Ins. Co., 918 P.2d 937 (Wash. Ct. App. 1996)
(determining that evidence that a liability insurer=s ability to
investigate underlying environmental contamination claim against its insured
was compromised by insured=s delayed notice of claim, standing alone,
is insufficient to support jury=s conclusion that insurer had suffered the
actual prejudice necessary to deny coverage based on the delayed notice; what
is lost or changed must be material and not otherwise available or subject to
reasonable reconstruction).  








Texas cases regarding late notice similarly have been
decided based on actual prejudice.  See, e.g., Filley v. Ohio Cas. Ins. Co.,
805 S.W.2d 844 (Tex. App.CCorpus Christi 1991, writ denied); cf.
Lennar Corp. v. Great Am. Ins. Co., 200 S.W.3d 651, 695 (Tex. App.CHouston [14th
Dist.] 2006, pet. filed) (sub. op. on reh=g) (holding that
the insurer=s Ainability to parse its damages any finer
than rough allocations for inspection and repair, and accompanying
administrative and legal costs@ as a result of the insured=s settlement of
claims without notice to or the consent of the insurer does not constitute
prejudice as a matter of law).  In such cases, prejudice was not presumed, but
demonstrated.  See, e.g., Blanton, 185 S.W.3d at 612B13 (holding that
the insurer was prejudiced by the insured landlord=s delay of two and
one-half years in providing notice of thirty complaints of a leaking roof
because the delay prevented the insurer from protecting itself from further
loss and resulted in health claims by the tenant and thousands of dollars in
avoidable defense costs).  Here, actual prejudice is also required by the
policy=s language.[10]

In accordance with this construction, we conclude that
coverage for bodily injury or property damage remains in force after the
insured=s breach of a
notice provision unless the insurer demonstrates that the breach caused the
insurer actual prejudice.[11] 
See Duzich v. Marine
Office of Am. Corp.,
980 S.W.2d 857, 866 (Tex. App.CCorpus Christi 1998, pet. denied) (question of fact as to Awhether insurers were actually
prejudiced at the time they learned of default@) (emphasis added). To hold otherwise
would be contrary to the plain meaning of the endorsement described supra,
and in effect, would transfer the burden to the insured to prove a negative:
that conjectured but unproven prejudice has not and will not occur.  

In reaching this conclusion, we do not add an additional
element to the insurer=s burden of proof or otherwise alter the
present standard; rather, we clarify the meaning of the word Aprejudice@ as expressed in
the unambiguous language of the policy and consistently applied in similar
Texas Alate notice@ cases over the
last thirty years. 

4.       USF&G
Failed to Prove Actual Prejudice.








As the movant for summary judgment, USF&G bore the
burden to produce evidence of prejudice.  See Tex. R. Civ. P. 166a(c).  USF&G contends that Coastal=s belated notice
of suit prejudiced USF&G as a matter of law by depriving it of anticipated
contractual benefits such as the right to investigate, defend, participate in,
and control settlement negotiations.  In support of this argument, USF&G
relies on Motiva Enterprises, LLC v. St. Paul Fire & Marine Insurance
Company, 445 F.3d 381 (5th Cir. 2006).  

The facts in Motiva are very different from those
presented here.  In Motiva, the insurer offered to defend its insured
from a bodily injury claim; the proffered defense was  subject to a reservation
of rights.  Id. at 383.  The insured asked the insurer to send a
representative with full settlement authority to a mediation but refused to
provide documents related to the case on the grounds that the insurer Anever acknowledged
coverage@ for the claim.  Id. 
The insurer=s representative attended the mediation but was asked
to leave.[12] 
Id.  The mediation continued without the insurer=s representative,
concluding in a $16.5 million settlement.  Id.

In analyzing these facts, the court first stated that Texas
law is unclear regarding Awhether an insurer must demonstrate
prejudice before it can avoid its obligations under a policy where the insured
breaches a prompt-notice provision . . . .@  Id. at
386.  Here, no such ambiguity exists: the policy requires the insurer to show
prejudice from the breach.  Thus, we can only speculate that the policy at
issue in Motiva contained no similar provision. 

The Motiva court then assumed that the insurer is
required to show prejudice, and although it discussed prejudice caused by
breach of a consent-to-settlement clause rather than a prompt-notice clause,
the Motiva court identified the facts on which it concluded that the
insurer was prejudiced: 








An insurer=s right to
participate in the settlement process is an essential prerequisite to its
obligation to pay a settlement.  When, as in this case, the insurer is not
consulted about the settlement, the settlement is not tendered to it
and the insurer has no opportunity to participate in or consent to the
ultimate settlement decision, we conclude that the insurer is prejudiced as
a matter of law. 

Id. at 386B87 (emphasis
added).[13] 


Here, however, none of these facts are present.  In Motiva,
the insurer sought to fulfill its own contractual obligations to defend the
insured and to participate in settlement negotiations, but was excluded from
the mediation.  In contrast, USF&G took no action  to participate in
ongoing settlement negotiations.  In Motiva, the insurer was denied
access to all documents related to the underlying claim, but here, as discussed
infra, no evidence shows that Coastal and the settling insurers failed
to cooperate with USF&G.  Although the Fifth Circuit Court of Appeals
questioned whether an insurer is required to show prejudice resulting from a
violation of a consent-to-settle provision in order to avoid coverage, the
court did not conclude, as USF&G suggests, that such a violation voids
coverage as a matter of law regardless of prejudice.  To the contrary, the
court in Motiva reviewed the facts of the case to determine if prejudice
had been established, and its narrow conclusion was based on widely different
facts than those presented here.  

Thus, even if we apply Motiva=s reasoning that A[a]n insurer=s right to
participate in the settlement process is an essential prerequisite to its
obligation to pay a settlement,@ we nevertheless conclude that USF&G=s right to
participate in settlement was not only preserved in this case, but was
acknowledged and its exercise encouraged.  On these facts, and given USF&G=s status as the
movant for summary judgment, we cannot infer prejudice that has not been shown
to exist.  See Tex. R. Civ. P. 166a(c).









USF&G similarly relies on Clarendon National
Insurance Co. v. FFE Transportation Services, Inc., 176 F. App=x 559 (5th Cir. 2006)
(per curiam).  In Clarendon, the policy at issue was subject to a $1
million self-insured retention (ASIR@) that Afunctioned
essentially as a deductible in that the insured, FFE, was responsible for the
first $1 million in damages arising from an accident.@  Id. at
560.  One of FFE=s vehicles was involved in an accident
resulting in several claims.  Id.  FFE settled all but one of the claims
for a total of $219,861.99, and rejected an offer to settle the remaining claim
for $700,000.  Id.  The claim was tried to a verdict of $1.1 million,
reduced in a post-judgment settlement to $1 million.  Id.  Three months
after the trial, FFE gave its first notice of suit to its insurer, Clarendon,
and subsequently sued for reimbursement of amounts it paid in excess of its
self-insured retention.  Id.  On appeal, Clarendon argued it had no duty
to reimburse FFE if it could show (1) prejudice as a matter of law, i.e.,
presumed prejudice, or (2) actual prejudice.[14] 
Id. at 561.








Although Clarendon was decided only twenty days
after Motiva, the Fifth Circuit stated that it Aneed not decide
whether the presumed prejudice rule is still good law@ because FFE=s rejection of the
settlement offer within the SIR limit resulted in actual prejudice.  Id. 
Like Motiva, however, Clarendon is distinguishable on its facts. 
Unlike the present case, the insurer in Clarendon was not notified of
the suit until several months after trial and therefore had no opportunity to
accept the lower settlement offer.  Here, USF&G was notified of the suit
before trial and invited to participate in settlement discussions.  Moreover,
the insurer in Clarendon proved actual prejudice in that it lost the
opportunity to settle the case for an amount within the insured=s self-insured
retention.  Unlike the insurer in Clarendon, USF&G has not
demonstrated that the plaintiffs in the underlying Lopez suit ever
offered to settle the case for a lower amount. 

USF&G also failed to establish that, as a matter of
law, the delay in notice prevented its investigation of the Lopez
claims.  For example, USF&G=s representative Mitchell Harless arranged
to review the litigation file of the attorneys retained by Lexington to
represent Coastal; however, he scheduled this appointment for a date more than
two weeks after receiving notice of the suit, and just five days before the
trial setting:

Q:      Okay.  Why did you wait to schedule a trip
down to Corpus until July 5th?

A:      No particular reason.  I mean, that just
seemed to be the date we agreed on.

Q:      That would have been five days before the
scheduled trial?

A:      If you=re telling meBif you=re telling me that it=s five days, then that=s right.

Q:      Okay.  Did you believe five days would have
given you enough time to have made your investigation?

A:      I=m not sure.

Q:      Did [USF&G] have any limitation on your
ability to travel from Houston to Corpus Christi?

A:      No.

Q:      Is there some reason that you didn=t call a lawyer down in Corpus
Christi, someone from Bren & Bren or Royston & Rayzor to go over and look
at the Barger firm file?

A:      No.

Q:      Did you have the ability to do that?

A:      Yes.








Harless attended the scheduled meeting, and USF&G
produced no evidence that the investigation and litigation by Coastal=s attorneys was
deficient, or that its own investigation was otherwise impaired by the delayed
notice.  USF&G also failed to establish that, as a matter of law, Coastal=s delayed
notification prevented USF&G from defending the suit or controlling
settlement negotiations after notice was received.  Unlike the circumstances in
the cases on which USF&G relies, it learned of the suit while the defense
and negotiations were still ongoing, and under the terms of the policy,
USF&G had the right to assume control of both.  

As the movant for summary judgment, USF&G bore the
burden to show its entitlement to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c).  But USF&G
produced no evidence that the late notice prejudiced it by preventing it from
investigating the suit or immediately assuming control of the negotiations and
defense, as offered by Coastal=s attorneys.  Therefore, we conclude the
summary judgment cannot be sustained on the basis of late notice.

B.        Voluntary
Payment

USF&G
moved for summary judgment on the additional ground that appellants are not
entitled to repayment of any part of the $7 million Lopez settlement
because they voluntarily settled the case without USF&G=s consent.  Specifically,
the USF&G policies at issue state, ANo insured will,
except at their own cost, voluntarily make a payment, assume any obligation, or
incur any expense, other than for first aid, without our consent.@[15]  Coastal, COIL,
and Lexington argue on appeal that USF&G=s summary judgment
cannot be sustained on this basis because USF&G failed to show the
settlement payments were voluntary and prejudicial.  We agree.

1.       USF&G Failed to Establish that Payment was
Voluntary.








As a threshold matter, USF&G did not establish that
appellants paid the settlement voluntarily.  Although USF&G asserts in its
motion for summary judgment that Coastal voluntarily paid the settlement, the
evidence it offers in support of this argument shows only that Lexington,
through its agent AIG Technical Services, offered to settle the case for $7
million on June 29, 2000, and the offer was subsequently accepted.  But a
settlement offer by Lexington is not necessarily the same thing as a voluntary
payment by Coastal.  AAn insurer who pays a third-party claim
against its insured is not a volunteer if the payment is made in good faith and
under a reasonable belief that the payment is necessary to its protection.@  Keck, Mahin
& Cate v. Nat=l Union Fire Ins. Co. of
Pittsburgh, PA, 20 S.W.3d 692, 702 (Tex. 2000) (citing Arkwright-Boston
Mfrs. Mut. Ins. Co. v. Aries Marine Corp., 932 F.2d 442, 447 (5th Cir.
1991)).  Moreover, an excess insurer=s payment to
settle a suit against the insured is presumptively involuntary for subrogation
purposes.  Id. (citing Argonaut Ins. Co. v. Allstate Ins. Co.,
869 S.W.2d 537, 543 (Tex. App.CCorpus Christi 1993, writ denied)). 
USF&G has never asserted or offered evidence that COIL or Lexington funded
all or part of the settlement without good faith or a reasonable belief that
payment was necessary for their own protection.[16]









In its motion for rehearing, USF&G relies on two
additional cases that do not affect our analysis.  First, USF&G cites Westchester
Fire Insurance Co. v. Admiral Insurance Co. for the proposition that Athe issue of
voluntariness is relevant only to a party=s standing to
bring a cause of action as a subrogee . . . . [and] has no relevance to the
proof required for the party to actually recover on its cause of action.@  152 S.W.3d 172,
179 (Tex. App.CFort Worth 2004, pet. filed).  But the issue in Westchester
was whether the primary insurer breached its duty to settle a covered claim;
the question of whether an excess carrier=s settlement was
voluntary under a policy provision such as that presented here was not at
issue.  Moreover, as the movant for summary judgment, USF&G bore the burden
to establish that reimbursement of the settlement payment was barred by the Avoluntary payment@ provision of the
policy.  Westchester provides no guidance on this issue.[17]


USF&G also relies on The Kroger Co. v. Champion
Maintenance Specialists, Inc., No. 14-098-00344-CV, 1999 WL 418380, at *3
(Tex. App.CHouston [14th Dist.] June 24, 1999, no pet.) (not designated
for publication).  In Kroger, we held that an insured who failed to
notify its insurer of a lawsuit but instead voluntarily assumed its own defense
without the insurer=s consent and in violation of a voluntary
payment provision was precluded from recovering its pre-notice attorneys= fees and
litigation expenses.  This holding is consistent with the well-established
proposition that an insured generally is not entitled to reimbursement of the
defense costs it voluntarily incurred before notifying the insurer of the
suit.  Because an insurer=s duty to defend is triggered by notice,
the insurer has no duty to reimburse the insured for defense costs incurred
before the insured gave the insurer notice of the lawsuit.  E & L
Chipping Co., Inc. v. Hanover Ins. Co., 962 S.W.2d 272, 278 (Tex. App.CBeaumont 1998, no
pet.).  Here, however, the issues before us are limited to those presented in
USF&G=s motion for summary judgment and presented on
appeal.  See Tex. R. App. P. 33.1(a),
38.1(h).  USF&G=s motion for summary judgment addressed only
its duty to indemnify appellants for the funds they expended in settlement after
notifying USF&G of the lawsuit and tendering Coastal=s defense, and not
for pre-notice defense costs.  Kroger offers no guidance on this issue.

2.       USF&G Failed to Demonstrate Prejudice.

There is a second reason that USF&G=s summary judgment
cannot be affirmed on the basis that the voluntary payment clause bars
appellants from reimbursement: USF&G failed to establish that the
settlement caused prejudice.  








All parties acknowledge that Hernandez v. Gulf Group
Lloyds, 875 S.W.2d 691 (Tex. 1994), requires an insurer to demonstrate that
the insured prejudiced the insurer by settling the underlying liability case
without its consent before coverage will be denied; however, the parties
disagree regarding the application of Hernandez.

In Hernandez, the insured acted without the consent
of its UM/UIM carrier in settling a case with the underinsured motorist who
caused an auto accident.  The carrier argued that the insured=s conduct violated
the following policy language:

This insurance does not apply:

a)       to bodily
injury or property damage with respect to which the insured, his legal
representative or any person entitled to payment under this insurance shall,
without written consent of the company, make any settlement with any person or
organization who may be legally liable therefor[.]

Id. at 692, n.1. 
Although the Hernandez insured=s settlement
breached this provision, the Texas Supreme Court noted that (1) only a material
breach voids coverage, and (2) a breach that was not prejudicial was not
material.  Id. at 693.  The Court then analyzed the materiality of the
breach to determine if it deprived the insurer of an anticipated benefit from
the insurance contract.  Within the context of an underinsured motorist claim,
the insurer=s anticipated benefit from the insurance contract was Aa valuable
subrogation right.@  Id. at 692.  Although the insured=s settlement
extinguished the subrogation right, the Court determined that the breach was
not prejudicialCand therefore, not materialCbecause the
underinsured motorist was judgment-proof, and thus, the subrogation right had
no monetary value.  Id. at 693B94.








USF&G argues that both the holding and the reasoning of
Hernandez are limited to uninsured motorist claims.  We disagree.  Hernandez
was expressly based on the fundamental principle of contract law that a
material breach by one contracting party excuses performance by the other
party, and an immaterial breach does not.  Id.  (AInsurance policies
are contracts, and as such are subject to rules applicable to contracts
generally.  A fundamental principle of contract law dictates that when a party
to a contract commits a material breach of that contract, the other party is
discharged or excused from any obligation to perform.@) (citations
omitted).  

This principle is not limited to uninsured motorist
policies.  See, e.g., Ins. Co. of N. Am. v. McCarthy Bros. Co.,
123 F. Supp. 2d 373 (S.D. Tex. 2000) (holding that, when a general contractor
settled a construction defects claim against it before notifying its insurers
of the suit, the court must demand that the insurer establish prejudice in
order to enforce a Aconsent to settle@ condition
precedent); Lennar Corp., 200 S.W.3d at 690 (determining that, absent
prejudice, commercial general liability insurer cannot avoid coverage for
insured=s settlement of
property damage claims prior to notice of suit).  We therefore follow the same
reasoning, and determine whether USF&G has shown that the settlement
payment was prejudicial.  

USF&G submitted no evidence of prejudice from the
settlement but argues that if it is required to show prejudice, the settlement
of the Lopez suit prejudiced it as a matter of law.  USF&G claims
that by settling the case, appellants deprived USF&G of the opportunity to
participate in the defense and settlement processes, and placed USF&G in
the same posture as one who is presented with a final, appealable judgment and
told to pay it.  

In support of this argument, USF&G relies upon West
Bend Co. v. Chiaphua Industries, Inc., 112 F. Supp. 2d 816 (E.D. Wis.
2000), aff=d, 11 Fed.App=x. 616 (7th Cir.
2001) (applying Wisconsin law).  In West Bend, the appellant asked the
federal district court to predict whether Wisconsin state courts would hold
that insurance coverage remains in effect when the insured breaches a voluntary
payment clause without prejudicing the insurer.  Id. at 824B25.  The court
avoided answering that question by holding that the insurer suffered prejudice
as a matter of law because the insured did not report the existence of the
liability suit until it had settled the suit after minimal investigation or
defense.  Id. at 825.  








The facts of West Bend are readily distinguished
from the present case.  Here, USF&G was aware of the lawsuit and of the
continuing negotiations before the settlement.  Unlike the insurer in West
Bend, USF&G was actually invited to send representatives to a
mediation.  Although it is uncertain whether USF&G knew of the mediation in
time to attend, USF&G was aware that at the close of the mediation,
appellants had already offered more than seventy percent of the plaintiffs= current demand. 
USF&G was also aware that negotiations were continuing, and that the offer
and the demand were closer than they ever had been.  USF&G therefore had
opportunities that the insurer in West Bend lacked.  For example,
USF&G could have asked the parties to continue or abate the suit to allow
coverage to be determined, or it could have required Coastal to terminate
settlement negotiations.  Thus, unlike the West Bend insurer, USF&G
not only had the option to participate in settlement negotiations, but could
have assumed control of the entire defense subject to a reservation of rights.[18]








Moreover, appellants presented evidence that the settlement
did not prejudice USF&G.  Walter Zimmerman, an adjuster with more than
forty-years experience, offered his expert opinion that the settlement paid to
resolve the Lopez claims was Amore than
reasonable.@  Appellants also presented evidence indicating how a
jury in the same venue would value the Lopez claims.  Three other
plaintiffs sued Coastal=s parent company, Coastal Corporation, in
a separate suit for burns resulting from the same explosion.  Coastal Corp.
v. Torres, 133 S.W.3d 776, 777 (Tex. App.CCorpus Christi
2004, pet. denied.).  A jury awarded them $122.5 million.  Id. at 777B78.  On appeal,
the judgment was reversed on the grounds that Texas does not recognize a cause
of action against a parent company for negligent control of the subsidiary=s budget.  Id.
at 779.  The subsidiary in the Torres case was Coastal, and although it
was not a party in Torres, Coastal=s liability was at
issue in the Lopez suit.  Thus, the Torres case offers some
insight as to the value of the Lopez claims.

USF&G does not contend that the claims were settled for
an unreasonable amount, but instead argues that prejudice need not be
monetary.  We agree.  But USF&G produced no evidence of prejudice, monetary
or otherwise.  It speculates that it might have settled the case for less money,
but there is no indication that USF&G intended to offer any settlement
funds at all.  There is also no evidence that the Lopez plaintiffs would
have accepted a lesser offer, particularly as they had recently rejected an
offer that differed by less than fifteen percent from the final settlement
figure accepted.[19] 
Thus, the only evidence pertaining to prejudice from the settlement is
appellants= evidence that the settlement was reasonable, and that
a jury in Corpus Christi, Texas likely would award the Lopez plaintiffs
more than $7 million. 

In its motion for rehearing, USF&G argues that:

None of the default judgment cases
. . . inquire into the reasonableness of the amount of the default
judgment, or whether the carrier could have produced an outcome monetarily
different from the amount assessed by default.  Likewise, none of the defense
cost cases decided under >voluntary payments= clauses required
proof the insurer could have defended the case more cheaply.








However,
both the Adefault judgment@ and Apre-notice defense
costs@ lines of cases
pertain to claims for reimbursement for financial obligations incurred before
the insurer was notified of the lawsuit.  In addition, both these lines of
cases concern prejudice resulting from the insured=s failure to
provide prompt notice of a lawsuit.  As previously discussed, the standard for
determining if the insurer has been prejudiced by late notice is whether the
insured has suffered an adverse change in position due to the delay.  See
Kimble, 767 S.W.2d at 850B51; see also Gibbons-Markey v. Tex.
Med. Liab. Trust, 163  F. App=x 342, 344 (5th
Cir. 2006) (AAccordingly, the dispositive factor in determining
whether an insurer has been prejudiced by a delay in tendering defense is not
how much time elapses prior to tender, but what happens during that time@ (citing Lee R. Russ & Thomas F. Segalla, 14 Couch
on Insurance 3d ' 199:139 (2006))).  We do not purport to
change that standard, nor do we imply that an insurer cannot be excused from
the duty to indemnify its insured or the insured=s subrogees for
the costs of a settlement made without the insurer=s consent if the
only prejudice shown is non-monetary.  Rather, we simply hold that, as the
movant for summary judgment, USF&G bore the burden to establish that it had
sustained prejudiceCmonetary or otherwiseCfrom the
settlement.  Here, USF&G failed to meet that burden.      

Given
USF&G=s failure to provide evidence of prejudice and appellants= evidence that the settlement was
reasonable, summary judgment in favor of USF&G cannot be sustained on this
basis.[20]

C.      Lack of Cooperation

Finally, USF&G argues that appellants breached the
policy=s cooperation
clause, which states, AYou and any other involved insured must .
. . cooperate with us in the investigation, settlement or defense of the claim
or >suit.=@  USF&G argues
that appellants breached the duty to cooperate by (1) failing to notify it
of the Lopez settlement and by requesting coverage for the settlement Aafter the fact [of
settlement],@ (2) failing to timely provide suit papers and
provide notice of suit, and (3) initially failing to provide USF&G
with documentation from the Lopez litigation file.

USF&G cites no authority for the proposition that
requesting coverage evidences a lack of cooperation, nor do we find this to be
the case.  This argument instead restates the claim of late notice:








Q:      Are you able to tell this jury how Coastal
Refining failed to cooperate with USF&G?

A:      [by
Harless]  To the extent that it=s rolled into the late notice, that would
be about the only thing that I could say.

But as
previously discussed, USF&G has not demonstrated that late notice caused it
to suffer prejudice.  

The basis of USF&G=s contention that
Coastal initially failed to provide USF&G with documentation from the Lopez
litigation is unclear, but is purportedly evidenced by the testimony of
USF&G representative Mitchell Harless, such as the following:

Q:      Putting aside for a moment the fact that you
had asked for status reports while the lawsuit against the Coastal Corporation
was continuing and there was some initial hesitation to give you thatB

A:      Right.

Q:      Bwas there anything else that you ever asked for that you
were refused?

A:      Not to my recollection right now.

Q:      Okay.  And, subsequently, you were given
copies of the status reports?

A:      I know that we were provided with some
information, but I really couldn=t detail exactly what all that was.

. . . 

A:      I never had the occasion to visit with a
Coastal rep who denied me information.  My dealings were with [Coastal=s counsel].

Q:      Okay.  Did you ever ask to sit down and talk
with someone from Coastal Refining?

A:      No.

Q:      Was there anything that you ever asked for
that Coastal Refining or Lexington said, AAbsolutely not, no way; we will not provide that to you?@

A:      Not that I recall.

Q:      Okay.








A:      Well, let
meBlet me back up. 
Initially that was told to me after the case settled, but they had some
internal discussions.  And apparently they resolved it to their satisfaction
that they would not be destroying the attorney/client privilege with regards
to the continuing litigation.  And then subsequent to them figuring that
out, they sent me some information.

(emphasis
added). The record does not clearly identify the specific documents that were
requested, the date they were requested, from whom they were requested, the
basis on which they were withheld, the extent to which they were produced, or
the date of production.  The only written request for records available for our
consideration is contained in USF&G=s letter of June
23, 2000, in which USF&G reserved its rights to deny coverage, and
requested Acopies of all reports generated by persons who have
investigated this accident . . . [and] reports and information concerning the
injury and damages sustained by Mr. Lopez.@       Coastal=s attorney
Augustin Rivera offered uncontradicted testimony that during his June 23, 2000
conversation with Harless, Rivera said he Awas available to
meet with [Harless] at any time to provide him with whatever information he
needed to get up to speed on where we were in the case.@  The record
further shows that USF&G scheduled the meeting to take place on July 5,
2000, and that the meeting did take place on that date.  USF&G provided no
evidence that the materials it requested were not produced at the meeting.  Because we take as true all evidence
favorable to the nonmovant and resolve any doubts in the nonmovant=s favor, we cannot conclude that
Coastal failed to cooperate. 

In
addition, it was USF&G=s burden to prove not only that Coastal failed to cooperate,
but that this failure prejudiced USF&G.  See Struna, 11 S.W.3d at
360 (stating it is the insurer=s burden to prove that the insured=s failure to cooperate prejudiced the
insurer).  USF&G has offered no evidence that this alleged lack of
cooperation caused prejudice.

Because
the summary judgment proof does not show that Coastal failed to cooperate and
that any such failure prejudiced USF&G, the summary judgment cannot be
supported on those grounds.








V.  Conclusion

Because there is no evidence that USF&G was actually
prejudiced by Coastal=s late notice, by the settlement of the Lopez
case, or by Coastal=s alleged lack of cooperation, USF&G
is not entitled to summary judgment on any of the grounds presented to the
trial court.  Moreover, USF&G failed to establish as a matter of law that
Coastal voluntarily paid the settlement or breached its duty to cooperate. 
Consequently, we reverse the judgment of the trial court concerning USF&G=s duty to
indemnify appellants for the costs of settlement, sever these claims from
appellant=s extra-contractual claims,[21]
and remand the indemnification claims for further proceedings consistent with
this opinion.

 

 

/s/      Eva M. Guzman

Justice

 

Judgment rendered and Substitute
Opinion filed March 8, 2007.

Panel consists of Justices Fowler,
Edelman, and Guzman.









[1]  The firm has since changed its name to Hartline,
Dacus, Barger, Dreyer & Kern, L.L.P.





[2]  Regardless of the date on which USF&G received a
copy of the notice, the record demonstrates that notice was sent in accordance
with the Service Contract before the second mediation.





[3]  Approximately two months after the hearing on the
motion for summary judgment, but before the trial court rendered its decision,
the appellants filed their Second Amended Counterclaim, adding allegations that
USF&G violated article 21.21, section 4(10) of the Texas Insurance Code. 
Upon review of the record, we find no indication that appellants sought or
obtained leave to file this amended pleading.  Although the trial court granted
leave Afor all amended or supplement[al] summary judgment
motions and/or briefs to be considered timely filed and served,@ the parties have cited no evidence that the trial
court considered the amended pleadings.  Moreover, the trial court later clarified
that the summary judgment was interlocutory, and stated its intent Ato address Plaintiff=s claims for attorneys= fees and
Defendants= claims related to its counterclaim, if any remain
in light of the June 25 [Summary Judgment] Order.@ (The italicized portion is a handwritten addition). 
On June 2, 2004, the trial court granted final judgment, and although
appellants= counterclaims under article 21.21 are not mentioned,
the order states, AThis Order disposes of all remaining issues and
parties, and is appealable.@  We conclude
from this chronology that the trial court disposed of appellants= article 21.21 counterclaims in its order of June 2,
2004, although USF&G never moved for summary judgment on these issues. 
However, appellants did not argue in their original brief that the summary
judgment was overly broad or that the trial court granted summary judgment on
any ground not presented in the motion.  Cf. Hendrix v. Port Terminal R.R.
Ass=n, 196
S.W.3d 188, 201B02 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  

In its response brief, USF&G pointed
out that appellants waived any argument that summary judgment on their article
21.21 counterclaims was improper.  Approximately six months after filing their
original brief and one month after filing their reply brief, appellants moved
for leave to file a supplemental brief addressing their article 21.21
counterclaims.  We denied the motion.  See Rueda v. Paschal, 178 S.W.3d
107, 111 n.2 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (refusing to
consider a supplemental brief filed three and one-half months after appellant=s original brief); Howell v. Tex. Workers= Comp. Comm=n, 143 S.W.3d 416, 439 (Tex.
App.CAustin 2004, pet. denied) (AThe rules of appellate procedure do not allow an
appellant to include in a reply brief a new issue in response to some matter
pointed out in the appellee=s brief but not
raised by appellant=s original brief.@). 
Thus, appellants= counterclaims under article 21.21 of the Texas
Insurance Code are not before this court on appeal.  Our discussion of the
motion for summary judgment therefore pertains only to the three grounds stated
above, each of which was expressly raised in USF&G=s motion for summary judgment and timely briefed on
appeal.  





[4]  The policy at issue is an occurrence-based,
commercial general liability policy providing coverage for property damage and
bodily injury, and our opinion is restricted to such coverage.  Cf. Hirsch
v. Tex. Lawyers= Ins. Exch.,
808 S.W.2d 561, 565 (Tex. App.CEl Paso 1991,
writ denied) (ATo require a showing of prejudice for late notice
would defeat the purpose of >claims-made= policies, and in effect, change such a policy into an
>occurrence=
policy.@); PAJ, Inc. v. Hanover Ins. Co., 170 S.W.3d
258, 263 (Tex. App.CDallas 2005, pet. granted) (treating a notice provision
as a classic condition precedent when the claim at issue was one of advertising
injury rather than bodily injury or property damage).





[5]  See Dairyland County Mut. Ins. Co. of Tex. v.
Roman, 498 S.W.2d 154, 157 (Tex. 1973) (holding that the requirement that
the insured give notice of an accident to the insurer as soon as practicable is
a condition precedent to coverage, and in the absence of waiver or other
special circumstances, failure to comply with this condition constitutes an
absolute defense to liability under the policy Aeven though the insurer had actual notice of the accident and was not
prejudiced by the lack of formal written notice from the insured.@).





[6]  The extent to which this approach applies to
coverage for personal or advertising injury rather than bodily injury and
property damage is unsettled.  Compare PAJ, Inc., 170 S.W.3d at 262
(applying the Cutaia analysis in a personal and advertising injury case
and holding that timely notice of suit is a condition precedent to coverage;
failure of that condition therefore barred recovery under the policy even
though the parties stipulated that the insurer was not prejudiced by the
insured=s delay in notifying the insurer of the copyright
infringement suit), with St. Paul Guardian Ins. v. Centrum G.S. Ltd.,
383 F. Supp.2d 891, 900B01 (N.D. Tex. 2003) (holding that insurance companies
must show prejudice from late notice before coverage for bodily injury under an
occurrence-based comprehensive general liability policy will be barred).  





[7]  But see Gibbons-Markey v. Tex. Med. Liab. Trust,
163  F. App=x 342, 344B46
(5th Cir. 2006) (holding that an insurer was not prejudiced by the insured=s delay of five months in notifying the insurer of the
suit where the insured was not properly served and was therefore unaware of the
suit until the deadlines for filing a motion for new trial and an ordinary
appeal had passed); Duzich v. Marine Office of Am. Corp., 980 S.W.2d
857, 867 (Tex. App.CCorpus Christi 1998, pet. denied) (recognizing a
defense to violation of prompt notice provisions where the insured did not know
of the proceedings against him until entry of default judgment).





[8]  See, e.g., Filley v. Ohio Cas. Ins. Co., 805
S.W.2d 844 (Tex. App.CCorpus Christi 1991, writ denied) (sustaining jury=s finding of prejudice when the insurer was not
notified of the covered occurrence until trial was imminent; the insured could
not be located; the insurer Awas put in the
posture of having to defend [the insured] without the benefit of having its
insured assist in its defense by disclosing facts, names of witnesses, and
otherwise assisting in case preparation@;
and therefore was compelled to accept the facts presented by the injured
third-party claimant).





[9]  An insurer would now have to show (1) its insured=s failure to answer or appear was
not intentional or the result of conscious indifference but was instead the
result of accident or mistake, (2) the insured has a meritorious defense, and
(3) granting a motion for new trial would not cause any delay or injury to the
third-party claimant.  Craddock v. Sunshine Bus Lines, Inc., 134 Tex.
388, 393, 133 S.W.2d 124, 126 (1939). 





[10]  As previously discussed, the policy states that
breach of a notice provision does not bar coverage Aunless we are prejudiced@ by the failure to comply.  The unqualified use of the present tense Aare@ indicates
current, actual prejudice, rather than speculative or potential prejudice.





[11]  The requirement that the insurer show Aactual prejudice@ is
also consistent with the law governing settlements without consent, discussed infra.






[12]  The opinion does not identify the person who made
this request.





[13]  The court further held that Aan insurer which tenders a defense with a
reservation of rights is entitled to enforce a consent-to-settle
clause . . . .@  Id.
at 385 (emphasis added).  Although USF&G reserved its rights, there is no
evidence that it tendered a defense.





[14]  If the abstract loss of the rights to investigate,
defend, participate in, and control settlement negotiations were sufficient to
show the necessary prejudice, then delaying notice to the primary insurer until
after settlement would always result in forfeiture of coverage, because the
settlement would necessarily foreclose the insurer=s participation.  But a review of the cases shows that
Texas law does not presume prejudice merely from settlement without the insurer=s consent.  See, e.g., Hanson Prod. Co. v. Ams.
Ins. Co., 108 F.3d 627, 631 (5th Cir.1997) (noting Athe modern trend in favor of requiring proof of
prejudice@); Comsys Info. Tech. Servs., Inc. v. Twin City
Fire Ins. Co., 130 S.W.3d 181, 191B92
(Tex. App.CHouston [14th Dist.] 2003, pet. denied) (holding that
an insured=s breach of a consent-to-settlement provision did not
discharge the liability insurer=s obligations
unless the insurer was actually prejudiced or deprived of a valid defense).






[15]  This language is taken from USF&G=s commercial general liability policy, and the
language in its umbrella policy is virtually identical.





[16]  USF&G does not contend that Coastal funded the
entire settlement, and has never contended that the portion of the settlement
consisting of Coastal=s self-insured retention should be treated differently
than payments by Coastal=s insurers. 





[17]  In Westchester, the Second Court of Appeals
held that an excess carrier who makes an involuntary settlement on behalf of
its insured has standing to sue the primary carrier for reimbursement as the
insured=s equitable subrogee, but must still prove the
validity of the reimbursement claim.  Id. at 179.  The court did not
address the voluntariness of the settlement itself. 





[18]  In addition, the insurer in West Bend
presented evidence that its insured=s
investigation and defense of the claim was deficient.  No similar evidence was
presented here.





[19]  It is perhaps equally likely that the plaintiffs= demands would have increased
proportionately as the number of participating insurers and policies increased,
so that USF&G=s participation would have made
settlement more costly, assuming that the expense of trial could be avoided at
all. 





[20]  As previously noted, there is also a question of
fact regarding the voluntariness of the payment. 





[21]  See n.3, supra.